## BUSBY *v.* LITTLEFIELD & *als.*

It is a general rule in equity that when a replication is put in to an answer, and the parties proceed to a hearing, all the allegations of the answer which are responsive to the bill will be taken as true, unless they are disproved by two witnesses, or by one witness with corroborating circumstances.

When, however, the answer sets up affirmative allegations in opposition to, or in avoidance of the plaintiff's demand, the answer is no proof of the facts stated, and the defendant is bound to establish them by independent testimony.

Where a plaintiff filed his bill to re-form a deed given by him, alleging that by the deed one hundred feet were conveyed on a certain street, whereas it should have conveyed thirty feet only, and the defendant in his answer admitted that there was a mistake in the deed, but "affirmed" that the deed should have been for thirty-two feet—it would seem that the defendant would be bound to establish his allegation by independent evidence.

Equity will reform a mistake made in drawing a deed, and may order a party holding land by a conveyance covering by mistake more than was purchased and intended to be conveyed, to release all claim to that which is unjustly held.

IN EQUITY. The following case is stated by the bill: That, on the 29th day of August, 1844, the complainant purchased of John Trickey certain premises in Dover, being a lot of land one hundred feet square, with buildings thereon, situated on the west side of Chestnut street, and afterwards put up another set of buildings on the northerly part of the lot, at an expense of about $1,000, and appropriated thirty feet front and rear, and one hundred feet deep, of the whole lot to these buildings; and that he has always occupied the remaining seventy feet of the

Busby *v.* Littlefield.

lot, with the buildings thereon, until the filing of the bill, which was in May, 1853.

That, on the 29th of August, 1850, the complainant sold to John S. Jordan, one of the defendants, the thirty foot lot, with the house and barn thereon standing, for $1,200, and gave him a warranty deed of the same, subject to what was due on certain mortgages, which sum Jordan was to pay. That, in giving the deed to Jordan, a mistake was made by the attorney who drew it, and instead of describing the thirty feet, which was all that was sold, the whole one hundred feet square were conveyed by the deed. That the complainant and Jordan both supposed that only the thirty feet were conveyed, and Jordan accordingly took possession of only the thirty feet, and the buildings thereon standing, and occupied that part, while the complainant occupied the remaining seventy feet.

That Jordan so continued in the occupancy of the thirty feet till the 23d of March, 1852, when he sold to Crawford, another of the defendants ; the bargain between them being for the thirty feet and no more. The deed of Jordan to Crawford was a warranty deed, and referred, for a description of the premises conveyed, to the deed of the complainant to Jordan.

The bill then alleges that Jordan by his deed supposed and believed that he was conveying, and Crawford knew that Jordan intended to convey, only the thirty feet, with the house and barn thereon, and that Crawford paid Jordan for only the thirty feet. That during the occupancy by Crawford, the complainant built a fence on the line between the thirty and seventy feet lots, which fence was standing at the time of the filing of the bill.

That Crawford occupied the thirty feet and the buildings thereon until the 28th of July, 1852, when he sold and conveyed the same by warranty deed to Littlefield, the other defendant. For a description of the premises conveyed, the deed of Jordan to Crawford was referred to.

The bill then charges that Littlefield, at the time he took the deed of Crawford, knew that there was a mistake in the deed of Busby to Jordan, and that in right and equity the southerly

part of the lot, being the seventy feet on Chestnut street by one hundred feet deep, was the property of the complainant. But notwithstanding this, Littlefield claims to hold and to own the whole premises ; and on the first day of January, 1853, he sued out a writ of entry against the complainant for the whole lot, and is prosecuting the suit for the recovery of the same.

That, on the 21st of May, 1853, the complainant requested Littlefield to release and quitclaim to him the southerly part of the lot, being the seventy feet, but he refused to comply with the request.

The bill prays that Littlefield may be compelled to release and quitclaim to the complainant the seventy feet, and that the complainant may be established in his title to the same. Also, for an injunction against Littlefield from the further prosecution of his writ of entry. There is, likewise, a prayer for general relief.

Jordan, in his answer, admits that Busby bought the whole lot of Trickey, and soon after erected a house and barn on the northerly end of the lot ; and that Busby has for many years resided in the house on the southerly end of the lot ; but he denies that there was ever any division of the lots, or any particular tract assigned to the house on the northerly end, or that it was ever fenced or marked off in any manner.

He admits that in July or August, 1850, he bargained with Busby for the northerly end of the Trickey lot for the sum of $1,200 ; but he " *affirms*" that when Busby first proposed to sell the premises, he said he would sell a lot thirty-two feet in width on Chestnut street, and running back the same width across the lot ; that he and Busby went together to examine the house and lot, and paced across the front. That he then told Busby that the line would come close to the back side of his shed on his lot, and Busby replied that if it came so close to the shed that the eaves should drop on his land, he could compel him to move the shed ; but he thought the line would clear the shed, and leave room for his folks to pass round behind it. That some time after this they agreed upon the terms of the sale, and

Busby procured a deed of the premises to be drawn. That Busby brought the deed, which was hastily run over by them, and very little attention was paid to the boundaries, and that neither the mistake alleged in the bill, nor the error as to the thirty-two feet, was discovered by either of the parties till long after the execution and delivery of the deed.

He then admits that the description of the land in the deed to him is erroneous, as charged in the bill; that it was not the intention of either of the parties that the whole of the Trickey lot should be conveyed; but he says that it was expressly agreed between Busby and himself that a lot thirty-two feet in width off the northerly end should be conveyed, and that no other lot was ever sold by Busby or bought by him.

He admits that after the delivery of the deed, he took possession of the house, and occupied the premises under the deed, and that Busby occupied the house on the southerly end of the lot, as alleged in the bill; but he denies that the lots were ever divided or fenced off, or that there was ever any particular occupation or use up to any particular line or mark on either side.

He then alleges that some months after he had taken possession of the premises, he discovered for the first time that the deed purported to convey only thirty feet, and that he was surprised at the discovery.

He admits that the description of the land in his deed to Crawford is truly set forth in the bill — the description being a reference to the deed of Busby to Jordan — that Crawford, by his tenants, took possession of the house under his deed, and afterwards sold and conveyed the premises to Littlefield at the time and in the manner alleged.

He states that before he signed and swore to his answer, Littlefield executed to him a release of all claim by reason of the deed of Jordan to Crawford, and of the deed from Crawford to Littlefield.

The defendant, Crawford, says that he purchased the house and lot of Jordan. That he had various conversations with Busby about the purchase, and mentioned the narrowness of the

lot as an objection to it; that it was said that the lot was thirty-two feet wide, in the presence of Busby, and that Busby never denied it. That he never knew or suspected that the lot was not so described in the deed from Busby to Jordan, till he carried it to an attorney to get a deed drawn from Jordan to himself. That it was then discovered by himself and the attorney that Jordan's lot was described as being only thirty feet in width, though in fact the description would cover the whole of the lot conveyed by Trickey to Busby. That feeling sure that a deed from Jordan under the circumstances would convey to him the thirty-two feet, he procured a deed to be drawn in the manner alleged in the bill, which Jordan afterwards executed and delivered. That being at that time on good terms with Busby, and in partnership with him, he supposed the mistakes would be rectified by Busby whenever the matter should be called up, but no attempt was ever made by him to correct the error. That in a few weeks thereafter the shop and tools and stock of Busby and himself were destroyed by fire, and the partnership was soon after dissolved.

That he conveyed the premises to Littlefield in the manner alleged in the bill, at the same time informing him of the understanding he had with Busby and Jordan about the size of the lot; and also informing him of the character of the deeds from Busby to Jordan, and from Jordan to himself.

He admits, generally, the other matters stated in the bill, but "affirms" that Busby contracted to sell thirty-two feet to Jordan, and not thirty, as alleged. He also denies that any partition fence was ever made between the lots, or that any particular appropriation was made for the northern house and lot.

He states further, that before signing and swearing to his answer, Littlefield released him from all claim by reason of the deed from himself to Littlefield.

Littlefield, in his answer, states the case, upon his information and belief, in substantially the same way as Jordan. He then adds that Busby told him that he had intended to sell Jordan a lot thirty-two feet wide, but that his deed read only thirty feet;

that he had, however, agreed with Jordan to make the deed right according to their original agreement.

He admits that his deed conveys the whole lot, and that he never bought the whole, but says that he took the deed in that way so that he might be able to compel Busby to convey the thirty-two feet. He says that he is ready to quitclaim to Busby the sixty-eight feet, and has placed upon the files of the court a deed to that effect, to be delivered whenever Busby will convey to him the thirty-two feet.

He· omits to state the consideration paid by him to Crawford, as interrogated in the bill. Other matters are introduced into the bill and answers, but they do not appear to be material to the decision of the case.

To these answers there are general replications.

The evidence in the case consists of the testimony of John H. White, Esq., who made the deed from Busby to Jordan ; of James M. Ross and Charles L. Smith, who witnessed the deed ; of Parker Clay, the owner of the land in the rear of the whole Busby land ; of George W. Hayes, a tenant of Busby, who resided in the house on the southerly end of the lot ; and of William B. Wiggin, a surveyor. This evidence has all been taken on the part of the complainant, no evidence having been taken by the defendants.

Mr. White testifies in substance that he drew the deed from Busby to Jordan, and took the acknowledgment ; that he had the deed of Trickey to Busby to draw it by ; that on one occasion, which was either when he delivered the deed to Busby or took the acknowledgment, Busby and Jordan were both present at his office, and he then read the deed over to them ; that he is quite positive about it ; that he never heard any thing about the thirty-two feet, and that neither of the defendants has ever been to see him about any mistake in the deed as to thirty feet or thirty-two feet.

James M. Ross testifies that he was present and witnessed the deed from Busby to Jordan ; that it was at Busby's house ; that Busby and his wife, Jordan and his wife, himself, and

Charles Smith, the other witness, were in the room together at the time ; that Busby and wife signed the deed ; that Charles Smith declined to sign as a witness until he heard the deed read ; that Busby then read it in a distinct voice, and all appeared to give attention to the reading ; that Smith then signed as a witness with him ; that he recollects the consideration was $1,200, and that the lot was thirty feet front and rear, and one hundred deep ; that he does not recollect the boundaries. He gives as a reason why he recollects the consideration and the size of the lot, that when he hears a man make a bargain he wants to know how much he pays, and what he gets for his money. He says that the parties did not appear to be in haste.

Charles L. Smith states the matter substantially the same as Ross. He says that he witnessed the deed ; that he declined to witness it until it was read, that he might know what he was signing ; that the deed was thirty feet front, and running back one hundred feet, to Parker Clay's land ; that he heard nothing about thirty-two feet from any one ; that Jordan attended to it when it was read.

George W. Hayes says that he has occupied the easterly part of the house, as the tenant of Busby, next to Chestnut street, on the seventy foot part of the lot, since the fall of 1849 — Busby occupying the other part of it ; that he has cultivated the land on Chestnut street for five years past, running to the bank of the Littlefield house, on the northerly part of the whole lot, and that no objection was ever made to his so doing by either of the defendants, or by any one. That in the spring or summer of 1850 he built a temporary fence, running from Chestnut street, and terminating about two feet north of the corner of the wood-shed, and put in a gate between the corner of the shed and the fence. That it was built of boards and joist, about three feet high. That he supposed he was putting it on the line between the two lots. That it was built close to the banking of the Littlefield house, and that there was a passway of about two feet between the wood-shed and the banking, which was used by his family and Busby's. That he never heard of any objection

from either of the defendants to his making the fence. That it stood there two or three years, and was taken down by himself, by degrees, as he wanted to use some of the boards, and that there is now there the remains of one of the posts.

Parker Clay, the owner of the land adjoining on the west, says, that for four years past there has been a cross-fence on the thirty foot line, and that Busby has cultivated the land up to the fence ; that he has been upon the lot a number of times, and knows it to be so.

William B. Wiggin testifies that he surveyed the whole lot on the 30th of May, 1856, and made a plan of the same, which he annexes to his deposition. He describes the lot and the buildings thereon. Says that the thirty-two feet line comes close to Busby's back buildings, so that the eaves of the wood-house project over the line three inches ; that the thirty foot line is two feet from Busby's wood-house, and three feet and a half from the Littlefield house ; that the Littlefield house is situated in the center of the thirty foot lot, leaving three and a half feet on each side of it, which form an embankment. That there are the remains of an old fence on the thirty foot line, with eight posts standing ; also a notch in the fence on the Clay line, at the terminus of the thirty foot line, which has been there apparently for some years.

*Woodman,* for the orator.

*Christie & Kingman,* for the defendants.

EASTMAN, J. Some of the most important matters set forth in the complainant's bill are admitted by the defendants' answers. The deed from Trickey to Busby of the hundred foot lot, and the boundaries of the same ; the erection and occupation of the buildings; the bargain for a portion of the lot only, and the error in all of the deeds from Busby to Jordan, and Jordan to Crawford, and Crawford to Littlefield, are facts not in dispute. It is conceded by the defendant that Littlefield has a

legal title, derived from Busby, through Crawford and Jordan, to sixty-eight feet of the lot, for which no consideration has been paid, and which in equity belongs to Busby. It is also conceded that when Crawford took his deed from Jordan he was aware of the mistake, and knew that he was receiving a deed of land which he did not purchase. The same may likewise be said with regard to Littlefield; he was well aware of the error in the deeds, and he took his, containing the error, with a full knowledge that it covered a lot three times as large as that which he purchased. Whatever may have been the controversy between the parties originally, when the suit at law was commenced, it is now narrowed down to one question only, and that is, whether the bargain between Busby and Jordan was for thirty feet front on Chesnut street, or for thirty-two; and consequently whether the deed from Busby to Jordan should have been drawn for the thirty or thirty-two feet?

The description in the deed is as follows: " A certain lot of land on the west side of Chestnut street, in said Dover, with the buildings thereon standing, beginning at the *southeasterly* corner of lot conveyed to me by John Trickey, by deed dated August 29, 1844, thence on my line northeasterly, thirty feet, to F. W. Baptist meeting-house, thence northwesterly one hundred feet, to land of Parker Clay, thence southwesterly thirty feet, to southwest corner of my lot, thence southeasterly one hundred feet, to the bound begun at. The whole of the lot so conveyed to me by said Trickey being subject to a mortgage to the Savings Bank for the county of Strafford, for $600, and to Oliver Libby for the sum of $500."

The error in the deed consisted in this : By beginning the first course at the corner of the lot, whereas it should have begun, according to the complainant's statement, seventy feet from the corner ; or, according to the defendants' admissions, sixty-eight feet from the corner.

In deciding the question, the first point which arises is this : To what extent are the answers to be regarded as disproving the plaintiff's case ?

As a general rule, where a replication is put into an answer, and the parties proceed to a hearing, all the allegations of the answer which are responsive to the bill, will be taken as true, unless they are disproved by two witnesses, or by one witness with corroborating circumstances. 2 Story's Eq. Juris. sec. 1528; 2 Danl.'s Ch. Prac. 983; Gresley's Eq. Ev. 4; *Hollister* v. *Barkley*, 11 N. H. 501; *Dodge* v. *Griswold*, 12 N. H. 573; *Hughes* v. *Blake*, 6 Wharton 468; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 92; *Miles* v. *Miles*, 32 N. H. 147.

When, however, the answer of the defendant is not responsive to the bill, but sets up affirmative allegations, in opposition to or in avoidance of the plaintiff's demand, and is replied to, the answer is of no avail in respect to such allegations; and the defendant is as much bound to establish the allegations so made, by independent testimony, as the complainant is to sustain his bill. 2 Danl. Ch. 984, note; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 88; also note to that case; *Wakeman* v. *Grover*, 4 Paige 23; *Bank* v. *Lewis*, 8 Pick. 113; *Paynes* v. *Coles & al.*, 1 Munford 373; *Thompson* v. *Lamb*, 7 Veasey 587.

Story, in speaking of the rule that an answer when responsive to the bill is evidence for the defendant, says: "We are, however, carefully to distinguish between cases of this sort, where the answer contains positive allegations as to facts responsive to the bill, and cases where the answer, admitting or denying the facts in the bill, sets up other facts in defence or avoidance. In the latter case the defendant's answer is no proof whatsoever of the facts so stated; but they must be proved by independent testimony." 2 Story's Eq. Juris., sec. 1529.

In *Beckwith* v. *Butler*, 1 Washington 224, a bill was filed in the Court of Chancery in Virginia against an administrator for distributive shares of an intestate's estate. The answer, among other things, set up a gift from the intestate to the administrator of a bond, which formed the principal part of the personal estate. This allegation was not supported by proof, and the chancellor directed the administrator to account for the amount of the bond. The defendant appealed to the Court of Appeals,

and the decree was affirmed. In delivering the opinion of the court the President observed, that " the answer of a defendant in chancery is not evidence where it asserts a right affimatively, in opposition to the plaintiff's demand. In such a case he is as much bound to establish it by independent testimony, as the plaintiff is to sustain his bill." And he adds that it would be monstrous indeed if an executor, when called upon to account, were permitted to swear himself into a title to part of the testator's estate.

Upon the doctrine of the authorities, as well as upon the equity of the case, it would seem that these answers, so far as they set up an error in the deeds different from that complained of by the plaintiff, and different from that appearing by the deed of Busby to Jordan, and thereby making a new demand, should be established by independent testimony.

The complainant in his bill puts the specific interrogatory, whether the bargain was not for a lot of land thirty feet only in width, on Chestnut street? And the defendants, instead of answering directly and positively that such was not the bargain, " affirm" that the bargain was for thirty-two feet on Chestnut street; and they then proceed to detail various circumstances and conversations with Busby tending to show that the bargain was as they state it.

It is true that the purport of their answers is to deny the case made by the plaintiff in his bill, but there is not that direct, positive and unequivocal denial, which would appear to be required by the rule in order to make the answers conclusive upon the complainant, unless controlled by evidence. The defendants, in fact, set up a new case. They admit that there was a mistake in the deed from Busby to Jordan, and that the error was knowingly continued in the subsequent deeds. They concede that the attorney, in drawing the deed, commenced at the wrong point, but they " affirm" that instead of commencing at the point designated and claimed by the plaintiff, he should have commenced two feet further south, and thus give them two feet more of the width of the lot. This is the demand which they make;

and making it, it seems to us that they should prove it. That there was a mistake in the deed, all admit ; but when the defendants make a new demand, not indicated by the deed, nor intimated by the complainant, by which they are to acquire a part of the estate of the complainant, they should establish their claim by evidence independent of their own answers. It is very clear that if the complainant by proper metes and bounds had given them a deed of only thirty feet front, and they should have filed their bill to have the deed reformed, so as to make it thirty-two feet, they would, in opposition to an answer denying the fact, have to prove by unequivocal testimony that such was the bargain, and that an error was committed in drawing the deed. Or, supposing this complainant to have given the defendants a deed of thirty lots of land, in some township, numbering them, and afterwards to have filed his bill, alleging that there was an error in the deed, and that it should have included ten lots only, and a specific interrogatory should be put as to this fact; and the defendants should answer by saying that they admitted there was a mistake in the deed, but they affirmed that the bargain was for twelve of the lots, and that the deed should be for them ; would such an answer be responsive to the bill, so as to entitle them to a decree without proof to sustain their averments ? It appears to us not, and that case seems to us to be this.

But even admitting that the answers are responsive to the bill so as to fall within the rule that they must be overcome by the testimony of two witnesses, or one, and corroborating circumstances, we are of opinion that the rule is complied with by the complainant's evidence.

The testimony of Mr. White that he read the deed over in the presence of Jordan ; of Ross and Smith, the witnesses to the execution, that the deed was read in their presence by Busby, when Jordan and his wife were in the room, and all were listening to the reading, and the distinct recollection of both of the witnesses that the deed was only thirty feet front, would seem to render it next to impossible that Jordan should not have known that it was thirty feet which were specified, and not thirty-two ;

especially if there had been any bargain for thirty-two feet. Moreover, if Jordan or either of the other defendants had supposed that their line extended two feet beyond the bank and to the wood-shed of Busby, it is almost incredible that they should have suffered the witness Hayes to have built the fence on the thirty-foot line, where he did ; and especially that they should have permitted it to remain there for two or three years, till after the filing of the plaintiff's bill, and never have intimated that the fence was upon their land. It is certainly very unusual, too, that they should never complain of the cultivation up to the thirty-foot line, by Busby and Hayes, as testified to by Clay and Hayes ; or of the occupation by Busby and Hayes of the two feet beyond the wood-shed for a passway.

It is, also, a significant fact that no one of these defendants has ever called upon Mr. White in regard to the error in the deed, and that no testimony whatever has been taken on the part of the defence.

It is likewise a very singular procedure that Crawford, with a knowledge of the error in the deed, should have taken his, with a like error, and that Littlefield should also have suffered the thirty feet only to be named in his deed. We know nothing of these defendants any further than what appears by the papers in this case. It seems that they are not at present on friendly terms with this complainant ; and we think that the course which they took in continuing the error in the deeds betokens quite as clearly an imaginary idea that the whole Trickey lot could be held by the deed, or that some advantage could be gained, as that it was a mere mistake, that could and would be corrected at any time. Littlefield, himself, admits that he supposed he could compel Busby to make the correction.

After reading over these answers and the evidence several times carefully, we are constrained to say, that the conviction is clear to our minds that there has been either a mistake or misrepresentation as to what Busby said in regard to the thirty-two feet. We are satisfied that there never was any bargain for thirty-two feet, but that it was only for the thirty feet, as stated in the deed ; and we think that Busby should have relief in the premises.

As Littlefield has released all claim upon Crawford and Jordan in consequence of their covenants of warranty, a decree may be made for Littlefield to quitclaim, directly to Busby, the seventy feet. To this course there can be no objection, and it is sustained by authority. *De Riemer* v. *Cantillon*, 4 Johns. Ch. 85 ; *Gillespie* v. *Moon*, 2 Johns. Ch. 585 ; *Prescott* v. *Hawkins*, 12 N. H. 19 ; *Keisselbrack* v. *Livingston*, 4 Johns. Ch. 144 ; *Craig* v. *Kittredge*, 3 Foster 231.

In addition to the decree for Littlefield to quitclaim the seventy feet, a perpetual injunction against the suit at law should also be granted.