## POTTER *vs.* TUTTLE.

When parties have deliberately, by their agreements or covenants, fixed the time for the performance of an act, a court of equity will be very cautious how it interferes in disregard of it, and will not do this, unless, by reason of mistake, or for other cause, falling within the legitimate province of

such court, it shall see that essential justice demands the exercise of its jurisdiction.

But, if a party who insists upon exact time, has been himself the cause of delay, a court of equity will proceed, notwithstanding, to decree a specific performance.

The defendant, to a bill for the specific performance of a contract, agreed " to convey by a good and valid deed," certain premises, within one year, at any time after four days' notice, on condition that the plaintiff should pay for the same in a stipulated manner, at the expiration of said year, or the notice to be given. An unrecorded deed of said premises, (of which the plaintiff was ignorant at the time of said agreement,) assigning to the defendant's grantor, a mortgage given by a former owner thereof, contained a reservation, of " such interest as the mortgagor acquired by virtue of a certain prior mortgage of the same to him, to secure the payment of fourteen hundred dollars." On being afterwards enquired of by the plaintiff, respecting said reservation, and notified by him that he should not accept a quitclaim deed of said premises, the defendant made no explanation, but offered, for an additional sum, to clear up the title. Before the expiration of the year, the plaintiff notified the defendant, that he should purchase and take the property according to their agreement, and demanded of him a warranty deed, tendering therefor, the stipulated payment. The defendant refused to execute such deed, and thereupon, tendered a quitclaim deed, and demanded payment, which the plaintiff refused. Held, 1. That such stipulated conveyance by the defendant, and payment by the plaintiff, were to be contemporaneous acts, and each party was bound to perform, on his part, at the fixed time. 2. That the plaintiff was justified in refusing to accept a quitclaim deed, and in suspending advances upon said premises, until the defendant had explained, or removed the cloud resting upon the title. 3. That, no form of conveyance being specified, any deed which would vest in the plaintiff a clear title in fee, would be a compliance with the contract, but that, as said premises were apparently under incumbrance, it was incumbent upon the defendant, either to remove, or explain the same, or to execute a warranty deed thereof, and, therefore, that the plaintiff was entitled to the decree he sought.

THIS was a bill in equity, brought by Henry J. Potter, against John Tuttle, praying for the specific performance of a written contract.

The cause was referred to a committee, who, at the term of the superior court for New Haven county, holden in October, 1852, reported substantially the following facts :

On the 28th day of October, 1850, said Tuttle was the

owner of premises, situated in the city of New Haven, on the westerly side of Franklin street, with four buildings thereon, known as the " Lanson property," being 135 feet front and rear, and about eighty-five feet deep, subject to the incumbrance of a mortgage, given by Laban and William Lanson, to said Potter, by their deed, dated December 19th, 1839, to secure their note for six hundred dollars, which note was then held by said Potter, and was due and unpaid,—but was subsequent to sundry other mortgages, given by the Lansons, upon the same property, to an amount far exceeding its value. Said last mentioned mortgages, together with Lanson's equity of redemption, had been vested in said Tuttle, who thereby became the absolute owner of said premises, except the mortgage to said Potter, and except so far as his title might be affected, by the reservation mentioned in a certain deed from Lyman Alling to Elah Gorham, the grantor of said Tuttle, which reservation was as follows : " And I do expressly reserve to myself, such title as I have acquired to the within described premises, by virtue of a certain mortgage deed from the within named William Lanson, dated the first day of June, 1836, to secure the payment of fourteen hundred dollars, and interest."

But there was, in fact, no such mortgage deed as is mentioned and referred to in said reservation. Said Tuttle preferred his bill to foreclose said Potter of his right in said premises, which was pending, on the 28th of October, 1850, and, on that day, in pursuance of an agreement then entered into, Potter released and conveyed to Tuttle all his interest in said premises, and also transferred and delivered to him said note, secured by said mortgage, and, in consideration thereof, Tuttle executed and delivered to Potter the following agreement, *viz.:*

" Know all persons by these presents, that I, John Tuttle, of the city and county of New Haven, in the state of Connecticut, for the consideration of one dollar, and other val-

uable considerations, received to my full satisfaction, of Henry J. Potter, of said city, do hereby covenant and agree with the said Potter, to convey to him, at any time after four days' notice, from said Potter, within one year from this date, by a good and valid deed, a certain piece of land, with all the buildings thereon, situated in said city, and bounded as follows, &c.: provided, however, that if said Potter shall neglect or refuse to pay to me the sum of seven hundred dollars, in cash, at the expiration of said year, or said notice from said Potter, and at the time that the aforesaid deed is to be given ; also to give me his negotiable promissory note, for the sum of seven hundred dollars more, payable in one year from its date, secured by mortgage on the aforesaid premises, prior to all other incumbrances, to be executed and delivered at the time of the delivery of the aforesaid deed from me, then this instrument shall be void.

JOHN TUTTLE.

Dated at New Haven, October 28th, 1850."

About the first of October, 1851, Potter examined the town records of New Haven, to ascertain if the release, by Lyman Alling to Elah Gorham, of his mortgage from Lanson, was on record,—and not finding it, he applied to Tuttle, for information in relation thereto, who told him that it was recorded. A few days after, he was again at the town clerk's office, when Tuttle came in with a deed, which he said was the release deed from Alling to Gorham, and which he was then going to put· on record. Potter did not then examine it, but, a few days after, called at the town clerk's office, and on reading the record, had knowledge, for the first time, of the reservation contained therein. He then called Tuttle's attention to the reservation in the deed, who gave him no explanation. He then enquired what it meant, of Alling, who made some claim that Gorham had not paid him all that was due him. Potter then communicated to Tuttle what Alling said, and that he was not satisfied to take a quit-

claim deed of the premises. Tuttle replied, that if Potter would give him twenty-five dollars more, he would get it cleared up, and give him a warranty deed. On the 23d of October, 1851, Potter, pursuant to the provisions of said agreement, notified Tuttle, that he should purchase and take the property, according to their agreement : and on the 27th and 28th days of October, 1851, he made repeated demands of Tuttle for a warranty deed of the Lanson property, and for a good and valid deed of the Lanson property in Franklin street, he had agreed to sell him, and at the same time, tendered to him seven hundred dollars in gold, and also his note for $700, payable one year from sale, with a mortgage deed of said premises, securing said note. Tuttle, upon the demands aforesaid, refused to give Potter a warranty deed of said property, but declared his readiness and willingness to give a deed, pursuant to the terms of their written agreement, and, upon said demands, tendered to Potter, a quitclaim deed of the premises described in said agreement, which deed was in the usual form ; and also demanded of Potter, the sum of seven hundred dollars in money, and his note for seven hundred dollars, payable in one year from its date, and secured by mortgage, pursuant to said agreement ; but Potter refused to receive said deed, or to pay said sum of money, or to deliver said note and mortgage for the same ; after which time, no tenders or demands passed between the parties.

The case, embracing the foregoing facts and questions of law arising thereon, was reserved for the advice of this court.

*Baldwin* and *Terry*, for the plaintiff, contended, 1. That the import of the agreement between the parties was, that the plaintiff should acquire a title, unincumbered upon the record, and free from doubt, and such as would be saleable, without first applying to a court of equity, to remove a cloud, that impaired its value ; and that the plaintiff was not bound,

either to advance his money on a doubtful title, or to rescind the contract, on the failure of the defendant to convey to him an undoubted title.

2. That time is not ordinarily of the essence of a contract; and where it is not, lapse will be relieved against. 2 Sto. Eq. Juris., § 776. 2 Sch. & Lef., 347, 684. Time is not of the essence of the contract, in this case. Newland on Cont., 238. Jeremy Eq., 461. *Heame* v. *Tenant,* 13 Ves., 287. *Doloret* v. *Rothschild,* 1 Cond. Eng. Ch., 302. *Wynne* v. *Morgan,* 7 Ves., 202. *Newman* v. *Rogers,* 4 Bro. Chan., 392. *Brashier* v. *Gratz,* 6 Wheat., 533.

3. That if time were here of the essence of the contract, still, if the circumstances make it equitable, especially if the lapse was caused by the acts of the party against whom relief was sought, a court will decree performance. *Savage* v. *Brocksopp,* 18 Ves., 335.

*Lindley* and *Blackman,* for the defendant, contended, 1. That when the obligation of the defendant to execute a contract, depends upon the *previous* performance of some act by the plaintiff, *within a limited time,* and the plaintiff neglects to perform such act, within the stipulated time, he can not recover, in a suit upon such contract. The rule is the same, both in law and in equity. Time is a material part of a contract, when the subject of the contract is of such a nature as to be exposed to a daily alteration in its value; and it may be made material, by the conduct or express agreement of the parties. 2 Sto. Eq., sec. 776 and note. 2 Sw. Dig., 26, 27. 1 Con. Eng. Ch., 100, 302, 332. *Moore* v. *Blake,* 1 Ball & Beatty, 68, 69. 5 Ves. Ch., 719. 5 Ves. Ch., 848. 13 Ves. Ch., 225. 1 Johns. Ch., *Benedict* v. *Lynch,* 1 Johns. Ch., 370. *Hutcheson* v. *McNutt,* 1 Ham., 14. *Jackson* v. *Ligon,* 3 Leigh., 161. *Scott* v. *Fields,* 7 Ham., 90.

2. That the phrase, "good and valid deed," does not import a deed with covenants. A *release deed* is a good and

valid deed, for the conveyance of real estate. *Dart* v. *Dart*, 7 Conn. R., 250. *Hall* v. *Ashley*, 9 Ham., 96. *Doe* v. *Roe*, 4 Scam., 117. *Gazley* v. *Price*, 16 Johns. R., 267. *Smith and Wife* v. *Pendell*, 19 Conn. R., 107. *Hill* v. *Hobart*, 4 Shep., 164. *Dodd* v. *Seymour*, 21 Conn. R., 476.

3. That the plaintiff, having neglected and refused to fulfill the contract within the time, and according to the conditions specified therein, the obligation of the defendant ceased; and the plaintiff, having neglected to perform the contract, and claiming to set up another, can not, now, enforce the specific performance of the contract, the provisions of which he has neglected to comply with. *Scmidt* v. *Livingston*, 3 Edw. Ch., 213. *Goodwin* v. *Lyon*, 4 Porter, 297. 7 Hammond, 2 part, 90.

CHURCH, C. J. The defendant covenanted to convey to the plaintiff, the premises in controversy, within one year from October 28th, 1850, at any time after four days' notice, on the condition, that the plaintiff should pay for the same, in the manner stipulated, at the expiration of said year, or the notice to be given.

The conveyance by the defendant, and the payment by the plaintiff, were to be contemporaneous acts, and each party was bound to perform, on his part, at the fixed time. Such was the legal import of the covenant. 14 Conn. R., 479. 1 Sw. Dig., 206.

The defendant excuses himself for a non-performance on his part, by reason, that the plaintiff did not make the stipulated payment, nor offer to do so, at the time agreed upon, but, on the contrary, refused, at that time, to perform, on his part. That the plaintiff did not pay, nor offer to pay, according to the terms of his covenant, at the time required, is true. Whether the time of payment was, in this case, so much of the essence of the contract, as that a court of equity will refuse its aid to the plaintiff, by reason of his neglect to perform in time, it is not, perhaps, necessary for us

to determine, upon the facts here disclosed. We may say, however, in reference to the principle claimed by the defendant, that, when parties have deliberately, by their agreements or covenants, fixed a time for the performance of an act, a court of equity will be very cautious how it interferes, in disregard of it, and thus, in effect, change the contract which the parties have made. It will not do this, unless, by reason of mistake, or some other cause, falling within the legitimate powers of a court of equity, it shall see that essential justice demands the exercise of its jurisdiction, irrespective of the lapse of such time. 2 Sto. Eq., § 776, note. *Hepwill* v. *Knight*, 1 Young & Collier, 1415.

But if a party, who insists upon exact time, has been himself the cause of delay, a court of equity will proceed, notwithstanding, to decree a specific performance. *Savage* v. *Brocksopp*, 18 Ves., 335. We think that this case falls within this equitable principle. It appears, that there had been a mortgage upon the premises, given by Lanson, the former owner, to Lyman Alling, which must be removed, before a good title could be given by the defendant. This mortgage had been assigned, by Alling, to one Elah Gorham, under whom the defendant held this title; and, as the deed of assignment had not been recorded, the plaintiff was ignorant of its exact contents; and, when examined afterwards, this deed was found to contain a reservation by the assignor, in the following words, " I hereby expressly reserve to myself, such title as I have acquired to the within described premises, by virtue of a certain mortgage deed from the within named William Lanson, dated the first day of June, 1836, to secure the payment of fourteen hundred dollars and interest, &c.                LYMAN ALLING."

It appeared from this, that the property was under the incumbrance of another mortgage, under which Alling still claimed an interest. And when enquiries were made of the defendant, concerning this, he made no explanation, but answered equivocally. The plaintiff, from this manner

of the defendant, was justified in hesitating and in refusing to receive a quitclaim deed, and even in suspending further advances in the purchase, until an explanation was given, and this cloud upon the title removed.

The question still remains : was the defendant bound to do more than he has done ? to tender more than a quitclaim deed ? His covenant was, not that he would *deed* the land to the plaintiff, but that he would *convey* it. No form of conveyance was agreed upon, and therefore, any deed, by force of which a clear title in fee would be vested in the plaintiff, would be a compliance with the agreement, whether a quitclaim, or a deed with covenants. *Mead* v. *Johnson*, 3 Conn. R., 592. *Dart* v. *Dart*, 7 *ib.*, 250. *Seymour* v. *Dodd*, 21 *ib.*, 476. It was the duty of the defendant to have removed the apparent incumbrance,—cleared away the cloud upon the title, or have satisfied the plaintiff, that no such incumbrance existed ; or else, he should have assumed the responsibility, by executing a warranty deed, and, in this way, at least, estopped himself from making a future claim. He refused to do this ; but actually demanded an additional sum, to clear the title ; he thus, in effect, refused to convey. The contract between these parties was a fair one, and we discover nothing in the conduct of the plaintiff, by which he has forfeited his right to a specific performance of it. We advise that a specific performance be decreed.

In this opinion, WAITE, STORRS and ELLSWORTH, Js., concurred. HINMAN, J., dissented.

　　　　　　　　　　Specific performance to be decreed.