Quinn v. Roath.

## CHARLES B. QUINN vs. EDMUND D. ROATH

Whether a specific performance of a contract shall be decreed is in a great meas
ure dependent upon judicial discretion, exercised not arbitrarily or capriciously,
but reasonably, according to the circumstances of the particular case

Every agreement as to time is not of the essence of the contract, and therefore
every failure in a literal performance in that respect does not of necessity fur-
nish to the other party a sufficient defense against a bill for a specific performance.

To make it a sufficient defense the broken stipulation should be of such a char-
acter as to constitute a condition precedent to the petitioner's right to enforce
the contract; or be such as on its non-fulfilment without reasonable excuse to
render in terms the contract void; or in some other manner to make it clearly
inequitable, under circumstances of fraud, mistake, surprise, unreasonable de-
lay, gross neglect, bad faith, or other manifest unconscientiousness, that the
petitioner should have a decree.

By a contract dated March 20th, 1868, R agreed, for the consideration of $400,
to sell to Q a certain piece of land, the deed to be given at any time within one
year on the payment of the purchase money, and by a final and separate
clause Q agreed to pay, on the first of April following, at least $25. On the
morning of April 2d, Q informed R that he was ready to pay him the $25 and
in the afternoon tendered him that sum, and on the 15th of April tendered him
the $400, which R refused to receive. Held that the time named in the con-
tract for the payment of the $25 was not of the essence of the contract, and
that Q was entitled to a decree for a conveyance

On the morning of April 2d, the respondent, claiming the contract to be void in
consequence of the petitioner's default, bargained the land by parol to one B,
and after the petitioner had tendered the $400, and had put his contract upon
record and instituted the present suit, conveyed the land to B, who gave his
note for the purchase money, which was still unpaid. Held that this constituted
no such change of circumstances, either as to the condition of the parties or as
to that of the property, as ought to make the defense of the non-payment of
the $25 on the day agreed, available against the petitioner's bill.

Under sec. 2, chap. 16, of Rules of Practice, (18 Conn., 574,) which requires that
in all motions for a new trial the precise points made by counsel must clearly
appear and that questions not raised distinctly below will not be heard, it is
not necessary that the precise object for which an inquiry is made should be
stated where it sufficiently appears from the question itself what the object was.

Upon the hearing in the court below the respondent offered parol evidence that
at the time of the negotiation and of the execution of the written contract it
was orally agreed that if the petitioner failed to pay the $25 on the first day
of April, the contract should be void. Held to be admissible

Where a party seeks to compel a specific performance of a written contract without
regard to collateral parol stipulations, a court of equity will receive evidence
of the parol stipulations, so as to require the party seeking its aid to perform
the entire contract, both parol and written, before giving him the aid sought.

A petitioner is not entitled to the same indulgence in the introduction of parol
proof in such a case, as the respondent may be, who offers to prove the exist-
ence of parol stipulations varying or limiting the written contract.

Quinn v. Roath.

Clear proof of such parol stipulations is required to justify the dismissal, on the ground of non-compliance with them, of a bill for a specific performance.

Evidence of such parol stipulations is also admissible where they have operated to induce the respondent to sign the written contract.

To compel a respondent to perform a written contract which has been varied by parol stipulations, would be compelling him to perform a different agreement from the one in fact made, and in the present case would be compelling him to perform an agreement which in consequence of the variation and the petitioner's default in respect to it had become void.

BILL IN EQUITY for the specific performance of an agreement to convey a piece of land; brought to the Superior Court in New London county, and heard, upon the bill and answer, before *Minor*, *J.*

The court made the following special finding of facts:

On the 20th day of March, 1868, the petitioner and respondent entered into the following written contract, and on the same day the petitioner paid to the respondent one dollar, which was receipted upon it.

"I, Edmund D. Roath, of Norwich, in the state of Connecticut, for the consideration of four hundred dollars, received to my full satisfaction, do agree to and with Charles B. Quinn of said town and state, that I will sell to him a certain lot of land situated in said Norwich, and bounded &c., [describing it.] The deed of said lot of land to be given at any time within a year from the date of this agreement, upon the payment to me of the purchase price of said lot by the said Charles B. Quinn, and if the said Charles B. Quinn fails to take said deed within the year he is to forfeit what money he pays to bind this agreement.

"It is further agreed by Charles B. Quinn, one of the parties to this instrument, that the aqueduct pipe now running through said lot is to remain indefinitely, and the pump-house to remain for three years; and also agrees to pay, on the first of April next, at least twenty-five dollars. Norwich, March 20th, 1868."

On the first day of April, 1868, the petitioner, being busily engaged in moving his household effects and changing his place of residence, did not pay the respondent the $25 stipulated to be paid on the first day of April, but on the following day, in the morning, the petitioner told the respondent that

he was ready to pay him the $25 in part fulfilment of his agreement, and was then informed by the respondent that he need not make the payment, as he had agreed on that morning to sell and convey, and had absolutely sold, the premises to his brother-in-law, Samuel B. Bulkeley. In the afternoon of the same day, at about two o'clock, the petitioner tendered to the respondent the $25, which the respondent refused to receive.

The petitioner never knew from the respondent or from any other source, that the latter had sold or contemplated selling the premises to Bulkeley, until told by the respondent as above.

On the 11th day of April the petitioner caused the written contract to be recorded in the land records of Norwich, in which town the premises were situated.

On the 15th day of April the petitioner tendered to the respondent, in fulfilment of the agreement, the sum of $400, and also offered to him for execution a deed of the land properly prepared. The respondent refused to receive the money, and also refused to execute the deed. The petitioner twice repeated the tender before bringing suit, but the respondent still refused to receive the money and to convey the land.

The respondent claimed on the trial that on the 20th day of March, the day the contract was executed, after a part of the contract had been reduced to writing, and while he and the petitioner were negotiating as to the payment of the $25 on the 1st of April, it was understood and agreed between him and the petitioner that if the $25 was not paid on the 1st day of April the contract should be null and void, and offered parol testimony in support of such claim. To the admission of this testimony the petitioner objected, and the same was ruled out.

After the execution of the written contract on the 20th day of March, and before the 1st of April following, the said Bulkeley called upon the respondent to purchase the premises and was informed by him that he had agreed to sell the same to the petitioner, but that if on the 1st day of April the petitioner failed to pay him $25, his agreement with him would become void, and he would sell the premises to him, Bulkeley. On the morning of the 2d day of April, and before the petitioner called upon him stating that he was ready to pay

him the $25, the respondent called upon Bulkeley and orally agreed to sell and convey the premises to him for $400. The agreement between Bulkeley and the respondent was never reduced to writing.

Afterwards the respondent conveyed the premises to Bulkeley by a warranty deed. The precise time when this deed was executed and acknowledged by the respondent did not appear, but it was after the commencement of the present suit, and at the time of its execution and acknowledgment both the respondent and Bulkeley knew that the petitioner claimed the premises under the written contract. The deed had been prepared some time before its execution, and the date of April 2d which had been put in it, was inadvertently left in at the time of its execution and acknowledgment. Bulkeley, at the time of the execution of the deed, gave the respondent his note for $400, which the latter still holds, and caused the deed to be recorded in the land records of Norwich on the 11th day of September, 1868. The premises in question adjoin other lands of the petitioner and are beneficial to him.

Upon these facts the Superior Court passed a decree that the respondent should execute and deliver to the petitioner a deed which should be sufficient to convey to him the tract of land described in the agreement and vest in him a clear title to the same in fee simple, subject to the provisions contained in the agreement with regard to the aqueduct pipe and pump house, but free from all other incumbrances and claims.

The respondent moved for a new trial for error in the exclusion of the parol evidence offered by him. He also filed a motion in error, assigning as error,—1. That specific performance of the contract should not have been decreed because the petitioner had failed to perform on his part. 2. That specific performance should not have been decreed because the land had been sold in good faith to Bulkeley, who now held the title. 3. That the court erred in passing the decree against the respondent without citing in Bulkeley to answer to the bill. 4. That as the respondent had conveyed the land in good faith to Bulkeley, it was not now in his power to convey it to the petitioner. 5. That the court

erred in making an absolute decree for the specific performance of the contract inasmuch as it nowhere appeared upon the record that the petitioner was without adequate remedy at law, or that he could not be sufficiently compensated in damages for the breach of the contract, if it had been broken.

*Pratt*, in support of the motions.

1. In this case the question is presented, whether a specific performance will be decreed against a respondent, when the petitioner has failed to perform his part of the agreement, and when the respondent has, in consequence thereof, been placed in an altogether different position from what he would otherwise have been. The object of the decree for specific performance is to do complete justice between the parties. The rule on the subject is not arbitrary. The matter lies within the discretion of the court. "Caution is to be used in decreeing the specific performance of agreements; and the court is bound to see that it really does that complete justice that it aims at, and which is the ground of its jurisdiction." 1 Story Eq. Jur., § 716 ; 2 Swift Dig., 34 ; *Patterson* v. *Bloomer*, 35 Conn., 57.

2. The petitioner in this case has failed to perform his agreement as to time. By the terms of the contract $25 was to be paid on or before the 1st of April. It was not so paid. The respondent had a right to suppose that the petitioner had abandoned the contract, and to sell the land to another party. While time may not always be of the essence of a contract in equity, if it clearly appear that it was so intended by the parties, and no inevitable accident have intervened to prevent the practical fulfilment, a court of equity will not decree a specific performance in favor of an unpunctual party. 3 White & Tud. Lead.Cas. in Eq., (H. & W. ed.,) 82; 1 Story Eq. Jur., (Redf. ed.,) § 776 ; *Benedict* v. *Lynch*, 1 Johns. Ch., 370.

3. The excuse offered by the petitioner, that he was busily engaged in the morning in changing his place of residence, is not sufficient. His time was under his own control, and his use of it for another purpose wholly voluntary.

4. The cases are all explicit, that where a change of circumstances has occurred owing to the delay of the petitioner,

a specific performance will not be decreed in his favor. 1 Story Eq. Jur., §§ 750, 769 ; 3 White & Tud. Lead. Cas. in Eq., (H. & W. ed.,) 80 ; 2 Swift's Dig., 29. In this case the respondent gave the petitioner the full time to perform an essential part of the contract. · On his non-performance the land was sold to a third party, and soon thereafter a deed executed. The contract with Mr. Bulkeley was as binding as the contract with the petitioner. It is not equitable to oblige the respondent to pay the penalty fixed in the decree under the circumstances of the case.

5. The evidence offered by the respondent was improperly excluded. In cases of this sort, courts of equity will permit the respondent to show by parol that there have been material terms omitted in the written agreement; that there has been a variation of it by parol ; or that it has been agreed by parol to treat it as void and thus discharge the written contract. 1 Story Eq. Jur., § 770 ; 2 Swift Dig., 29 ; 2 White & Tud. Lead. Cas. in Eq., (H. & W. ed.,) 659, 660. The law upon this subject is different in equity from what it is at law ; and evidence which would be totally inadmissible at law is admissible as a defence to a bill demanding a specific performance. 1 Sugden on Vendors, (10th ed.,) 224 ; 2 Swift Dig., 29. The court erred in following the strictly legal rule instead of the equitable. The foundation of the equitable rule is apparent, which is, that courts of equity will not enforce agreements which are not, under the actual circumstances, just between the parties. In the case at bar it would be manifestly unjust, if we produced clear evidence of a parol agreement between the parties that the written contract should be null and void if the payment was not made on the first of April, to enforce the written contract despite the parol agreement. We should, therefore, even if the court should be of the opinion that the decree ought not to be reversed and the bill dismissed, have a new trial, and be let in to prove the parol agreement. 2 Swift Dig., 34 ; *Potter* v. *Tuttle,* 22 Conn., 512 ; *Dwight* v. *Pomeroy,* 17 Mass., 303.

*Hovey* and *Halsey,* contra.

1. Exact performance in regard to time is not required

in order to entitle a party to a specific performance. 2 Story
Eq. Jur., §§ 747, 771, 776; 3 White & Tud. Lead. Cas. in
Eq., (H. & W. ed.,) 74. The payment of $25 on the first
day of April was not of the essence of the contract, nor a
condition precedent. 3 White & Tud. Lead. Cas. in Eq.,
(H. & W. ed.,) 84. The principal thing was the payment
of $400 within the year. If he failed to do so he forfeited
what he had paid on the contract. If he had paid one hund-
red dollars instead of one dollar on the execution · of the
contract, it would be subject to the same construction that it
is now. If the claim of the defendant is correct, whatever
sum the petitioner had paid would be forfeited, if he failed
from any cause to pay $25 on the first day of April.

·   2.   The sale to Bulkeley does not affect the equity of the
petitioner to relief. No legal contract had been made with
him when the $25 or the full sum of $400 was tendered. It
rested wholly in · parol and nothing had been done under it.
After this petition had been brought, and with full knowledge
of the fact, Bulkeley took his deed. He acquires his title
*pendente lite*, and is bound by the decree made in the suit. 2
Story Eq. Jur., §§ 784, 788, 789; 1 id., §§ 405, 406; *Norton
v. Birge*, 35 Conn., 250. If the conveyance had been made
to Bulkeley before suit brought, he would have been a neces-
sary party, but taking his deed pending the litigation he is
concluded by the decree.

3.   The defendant will not be permitted to say that he
cannot perform, when he has conveyed pending a petition to
enforce performance. 3 White & Tud. Lead. Cas. in Eq., 91.

4.   The right to recover damages at law is not always a
test as to granting relief in equity. Relief may be granted
when, from failure to perform strictly, no damages could be
recovered at law. 2 Story Eq. Jur., §§ 741, 748; 3 White &
Tud. Lead. Cas. in Eq., 58. If, however, damages could be
recovered at law, it furnished no bar to relief in equity. The
lands in question adjoin other lands of the petitioner, and
are beneficial to him, and therefore compensation in damages ·
would not be adequate relief. 2 Story Eq. Jur., § 746.

5.   The specific performance of contracts is a matter of
discretion in the Court. 2 Story Eq. Jur., § 742. That dis-

cretion has been properly exercised, within the rules and principles applicable to the subject. There is therefore nothing erroneous in the decree.

6. No question is presented by the motion for a new trial for the consideration of this court. It does not appear what point was made and decided in the court below. This is necessary by the rules of practice. Rules of practice, Ch. 16, § 2. (18 Conn., 574.) If the evidence was admissible for any purpose, it may have been offered for some purpose for which it was inadmissible. The defendant not being confined by his motion to any claim made at the trial, could set up an entirely different claim here, which is not fair to the court or the opposite party. But if the court is to consider the motion, and to examine whether the evidence was admissible for any purpose, we claim that it was not.

PHELPS, J. 1. This case comes before us on a motion in error, and also a motion for a new trial. It is claimed in support of the motion in error, that the respondent was not bound to a specific performance of the contract, because one of its provisions required the petitioner to pay $25 of the purchase money for the land on the first day of April following the execution of the contract, and he had neither done it, nor furnished a reasonable excuse for his non-performance.

For all the purposes of *this* motion the writing must be held to contain the entire and precise contract between the parties, and the claim here insisted on raises the question whether that provision in the agreement, fairly considered in the light of the ascertained facts, is of such a character as to render the time named in it of the essence of the contract.

It is said by the respondent that the principle which should govern this case is not distinguishable from that declared in *Potter* v. *Tuttle*, 22 Conn., 512. The decision in that case did not turn upon this question, and the language of the court on this subject was confined to a brief and very general statement of the law, rather than to its pertinency to the facts of the case then before the court, and we cannot determine what would have been their adjudication of the point in that case if its decision had been rendered necessary. They

say, " When parties have deliberately by their agreements and covenants fixed a time for the performance of an act, a court of equity will be very cautious how it interferes in disregard of it, and thus in effect change the contract which the parties have made. It will not do this unless by reason of mistake, or some other cause falling within the legitimate powers of a court of equity, it shall see that essential justice demands the exercise of its jurisdiction irrespective of the lapse of time. 2 Story Eq. Jur., § 776, note. *Hipwill* v. *Knight*, 1 Younge & Coll., 415."

It will be observed on examination of that case, that the respondent agreed to convey the premises in question within a certain time, and the petitioner on his part promised to pay the *entire consideration* for the same at the expiration of the specified time.

Whether a specific performance of a contract shall be decreed is in a great measure dependent upon the exercise of a sound judicial discretion, not arbitrarily or capriciously, but reasonably, according to the circumstances of the particular case, and therefore if the court had in that case strictly applied the principle which they laid down, it would not necessarily constitute a precedent which should control our determination of the case before us. The court seems not to have so much considered the question of the materiality of time, as the inequitable character of the claim of a party to enforce a contract against another which by his own inexcusable laches he has himself first broken, and their general views on that subject are unquestionably sound.

Every agreement as to time is not of the essence of the contract, and therefore every failure by the petitioner in a literal performance does not of necessity furnish a sufficient defence against a bill for a specific performance; and we think no better or safer general rule on this subject can be prescribed than that the broken stipulation should be of such a character as to constitute a condition precedent to the petitioner's right to enforce the contract, or be such as on its non-fulfilment without reasonable excuse to render in terms the contract void; or in some other manner to make it clearly inequitable, under circumstances of fraud, mistake, surprise,

Quinn *v.* Roath.

unreasonable delay, gross neglect, bad faith, or other manifest unconscientiousness, that the petitioner should have a decree.

If we turn to the facts in this case we shall notice that the contract is dated on the 20th of March, that the whole amount of the purchase money was $400 to be paid within a year, and that the concluding sentence of the agreement is a promise by the petitioner to pay on the first day of April thereafter at least twenty-five dollars. The clear intention of the parties was, that a full year should be given for the completion of the payment of the entire sum. No condition is expressed that if the petitioner should make default of payment of the $25 at the time promised he should not upon payment of the full sum within the year be entitled to the land, or that the contract should be void in consequence of the non-payment of the $25 at the time named, or that the punctual payment of that sum should be a condition precedent to his right to require of the respondent a performance of the contract on his part upon the subsequent complete performance by the petitioner within the year.

The record discloses nothing from which we can infer a design by the petitioner not to perform the contract in good faith, or that he intended to lie by, and by taking time speculate on the chances of a change in the value of the land, with a view to take advantage of it by finally performing or refusing to perform as should appear most for his interest. He was busily engaged on the first of April in removing his family and goods and changing his residence, and on the morning of the following day he informed the respondent that he was ready to pay him the amount which was due, and in the afternoon of the same day duly tendered that sum to the respondent; and on the 15th of April, and on two other and different occasions not long subsequent thereto, lawfully tendered the respondent the full sum of $400, together with a proper deed for his execution, which the respondent refused to receive or execute. The petitioner had no knowledge till the occasion of his first interview with the respondent on the 2d of April, that the respondent had had any previous negotiation with another person for the sale of the premises. His

intention to fulfil the written contract is demonstrated by the facts, and we are unable to perceive how the respondent, regarding nothing but the written contract, can be justified in considering the time for the payment of the $25 as so material to the agreement as to warrant him in treating the whole contract as void upon the petitioner's failure under the circumstances to pay that sum on the precise day. The delay was but for a single day, and the time for the payment by the petitioner of seven-eighths of the purchase money was yet several months in the future, and his intention to execute and not to abandon the contract was manifest. Besides, the respondent could have suffered no appreciable injury by so slight a lapse of time, and in fact bargained the land to another person for the same price, and gave him an indefinite time for payment. We are satisfied this question was properly disposed of. 2 Story Eq. Jur., §§ 747, 771, 776; 3 White & Tudor's Leading Cases in Equity, 75 to 78, and cases cited; *Jones* v. *Robbins*, 29 Maine, 351; *Remington* v. *Irwin*, 2 Harris, 143; *De Camp* v. *Feay*, 5 Serg. & Rawle, 328; *Jackson* v. *Ligon*, 3 Leigh, 161, 187; *Viele* v. *Troy & Boston R. R. Co.*, 21 Barb., 381; *Langworth* v. *Taylor*, 14 Peters, 172.

It is also insisted by the respondent that such a change in circumstances occurred, as the result of the petitioner's delay in the payment of the $25, as to constitute a defence to the bill. The circumstances relied on are, that on the morning of the 2d of April, the respondent, treating the contract as void in consequence of the petitioner's default and claiming it to be void, bargained the land by parol to one Bulkeley, his brother in law; and the claim is made that thereby a third person had acquired an equitable interest in the premises, and the condition of the parties and the land had become so far changed that the respondent could not properly perform his agreement with the petitioner.

The record shows that the respondent did not execute a deed of the land to Bulkeley until a considerable time after the petitioner had tendered both the partial and the full amounts of the purchase money, had recorded his contract with the respondent in the land records of the town in which

all the parties resided, and had instituted the proceedings in this case ; and Bulkeley had not otherwise paid the respondent for the land than by giving his note therefor, which is still unpaid. The respondent acted hastily, in so soon bargaining the land to another after the petitioner's default without notice to him, and erroneously, in treating the written contract as void for such default. And we discover no such change in circumstances, either in the condition of the parties or of the property, as ought in our judgment to make this defence available against the petitioner's bill.

We think there is nothing in the assignment of errors which entitles the respondent to a reversal of the decree passed by the Superior Court.

2. The motion for a new trial presents the single question, whether parol evidence offered by the respondent was admissible to prove that the written contract between the petitioner and himself was so varied, before it was entirely reduced to writing and executed, as to have verbally interpolated into it the provision that, if the petitioner failed to pay a stipulated installment of the purchase money on a particular day, the contract should thereupon be void. The bill seeks to compel the respondent to specifically perform the agreement as expressed in the writing alone, and parol evidence of such verbal variation was offered to be introduced by the respondent by way of defence against the bill, and was excluded by the Superior Court.

The petitioner's first objection to this motion is, that it does not appear from the record that when the evidence was offered the purpose for which it was tendered was disclosed, and that no point with reference to its admissibility was presented to and decided by the court. Rules of Practice, ch. 16, sec. 2, (18 Conn., 574.) It simply appears from the finding that the evidence was offered by the respondent and excluded, but it was conceded before us on the argument that it was received without prejudice, subject to the objection made to it, and to the future consideration and disposition of it by the court, and ultimately rejected. It is frequently the case that testimony is offered in the progress of a cause, the

precise object of which is not at the time distinctly apparent, and if its admissibility is questionable, opposing counsel, or the court, very properly inquire the purpose for which it is sought to be introduced ; but that course was entirely unnecessary here, because the testimony presented bore upon its face the certain object of its introduction. It was so obvious as to be susceptible to no possible misunderstanding or misconstruction, and no point could have been more clearly made respecting it than by the simple offer of its introduction. Again, the respondent's answer to the. bill filed in due form had fully apprised the petitioner that on the trial of the cause the claim would be made and insisted on by the respondent, that precisely such a verbal variation in the written contract had been made by the parties as this evidence pointedly tended to establish. The object of the rule was to afford an additional safeguard against surprise, and protect counsel from liability to be required to answer claims in a motion, which without a previous explicit statement they might misapprehend. In this case however the reason of the rule entirely fails, and although the exception taken is literally within its terms, it ought not to prevail.

The remaining objection is to the admissibility of the evidence on any ground, and therefore pertains directly to the merits of the question, and will be considered in the general discussion of the subject matter of the motion.

The ordinary ground on which a court of equity allows the introduction of parol proof to add to or affect a written instrument, is to provide relief in cases of fraud, mistake and surprise, and prevent a party who has obtained an instrument under such circumstances from deriving to himself an unfair and inequitable advantage from it, to the injury of the person from whom it was so obtained. This doctrine finds its sanction in the truest promptings of conscience, and while it is. not of so general applicability in other cases it is not confined to those mentioned ; and it is claimed by the respondent that, though operating within more circumscribed limits, it is recognized with similar certainty and clearness in the case we are considering, and that such evidence is equally admissible

for the purpose for which it was here offered as it would have been to prove either fraud or mistake.

Taking this case as we find it on the record, the evidence was offered, not for the purpose of proving a fraud in the petitioner in withholding the verbal stipulation from the writing, nor any accident, mistake or fraud in not embodying it in the written instrument. We understand the verbal provision not to have been designed to be incorporated into the writing, but to stand as an independent variation of it, and that the respondent claims it was intended, if not strictly performed by the petitioner, to render void the entire agreement ; and that such performance by the petitioner was in effect to operate as a precedent condition to his right to a conveyance of the land. So considering it, we are to decide whether by way of defence against the petitioner's bill the evidence ought to have been excluded.

The admissibility of the particular species of evidence here offered is restricted to the defence of bills brought for a specific performance, and the courts, in admitting it to repel the attempt of a purchaser or seller of land to oblige the other party to a contract to perform his part specifically, have proceeded upon the just ground of inequitableness in the petitioner in striving to enforce the execution of a written contract with parol variations by regarding only the written provisions and entirely disregarding the verbal variations. This is in strict accordance with the spirit of equity, which requires of a party seeking the aid of a court of chancery to come with clean hands and a willingness to do equity ; and the most flagrant fraud, though grosser in degree, is not a more certain violation of this spirit, than a deliberate attempt to enforce only the written portion of a contract which contains verbal variations essentially changing its character and rendering it less favorable to the petitioner.

The law seems well settled that if a party to a contract for the conveyance of land desires the enforcement of the performance of it, such enforcement must be of the precise contract in terms which the parties in fact made, and it is generally true that he will not be permitted to enforce one resting

partly in writing and in part in parol, and if he attempts to compel the performance of a written contract which contains collateral verbal alterations he cannot be allowed the benefit of the written portion without also accepting such parol modifications of it as exist. It is equally well established that a petitioner who brings his bill for a specific performance, is not entitled to the same indulgence in the introduction of parol proof as the respondent may be, who defends against it and offers to prove the existence of verbal stipulations inconsistent with, and varying, and operating as conditions of or limitations to, the writing.

A written contract for the purchase and sale of land confers upon the parties vested rights from the moment of its execution, because equity considers that as done which has been agreed to be performed, and when one relying on that equity seeks a specific performance of the agreement, the respondent, to rebut the equity, may show by parol that it was assumed and unreal, and that the contract was in fact entirely variant from that which is being attempted to be enforced, and that the variation consists in a condition resting entirely in parol.

The evidence offered in this case was for the purpose of proving that, before the writing was completed and signed, the parties verbally agreed that unless the payment by the petitioner of $25, parcel of the purchase money, was made on the first of April, the contract was thereupon to be void; in other words, to show that the payment of that sum at that time was to be a condition precedent to the petitioner's right to claim a conveyance of the land. This was a stipulation in which the time mentioned was vitally essential, and if it had been proved to have been made, and broken, by the petitioner, would have constituted a successful defence to his bill for performance.

Clear proof is very properly required in support of the claim of a material verbal alteration of a written contract, to justify the dismissal of the bill on that ground; and whether, if this evidence had been received, it would have fully satisfied the mind of the court, we of course cannot determine,

and it is unnecessary that we should. We are not required to deal with the question of the absolute sufficiency of the proof presented, but to simply say whether evidence which was strictly pertinent, and which strongly tended to establish a material fact, was properly excluded. As I have already suggested, if it had been admitted, and had clearly established the fact to the proof of which it was offered, a perfect defense to the bill would thereby have been interposed, and as evidence of this character was proper to show what the entire contract was, its admissibility in this instance follows as a necessary legal consequence.

Another class of cases has been determined upon the ground that the agreement by the petitioner to the parol variation operated to induce the respondent to sign the written contract. The case is not placed by the record on that ground, though it might with some plausibility have been. The fact appears, that while the writing was being drawn, its completion was temporarily suspended to await the result of a negotiation between the parties with reference to the parol variation, and after the negotiation had resulted in the petitioner's agreement to that variation the writing was executed by the respondent. In view of these circumstances, which the respondent claimed to be true and asked permission to prove, the conclusion that the respondent was materially influenced to execute the writing by the petitioner's previous assent to the verbal stipulation, would appear to be neither labored nor unnatural.

Another reason might well have been urged why upon principle this evidence should not have been rejected. While no pretence of fraud is made in connection with the drafting or execution of the writing, yet proceeding upon the respondent's claim which he desired an opportunity to prove, and in regard to which we cannot say he would not have been successful, the effort by the petitioner to enforce only the written, and entirely disregard and avoid the verbal, provisions of the contract, was an attempt to compel the respondent to perform a different agreement from what was in fact made, and one which in consequence of the variation, and the peti-

tioner's subsequent default with respect to it, was void. Such an attempt if made was unfair and unconscientious. It was an effort to make an unjust and fraudulent use of the written part of the contract, which might properly have been resisted by the introduction of the offered evidence. 2 White & Tudor's Leading Cases in Equity, 659, 662, 689, 690; 2 Story Eq. Jur., §§ 770, 770*a*; 1 Sugden on Vendors, 137 to 151; 2 Swift's Digest, 29; *Clark* v. *Grant*, 14 Vesey, 520; *Winch* v. *Winchester*, 1 Ves. & B., 375; *Dwight* v. *Pomeroy*, 17 Mass., 328; *Brooks* v. *Wheelock*, 11 Pick., 440; *Osborn* v. *Phelps*, 19 Conn., 73; *Cathcart* v. *Robinson*, 5 Peters, 262; *Stoutenburg* v. *Tompkins*, 1 Stockton's Ch., 332; *Ferussac* v. *Thorn*, 1 Barbour, 42; *London & Birmingham Railway Co.* v. *Winter*, 1 Craig & Phill., 57.

A new trial is advised.

In this opinion the other judges concurred.