NEIMAN *et al. v.* BUTLER.

*(Common Pleas of New York City and County, General Term.* June 6, 1892.)

1. APPEAL—REVIEW—SUFFICIENCY OF EVIDENCE.

Where no case is made or evidence printed, and appellants in their brief state that the appeal is from the findings and conclusions of law alone, on the theory that the former do not sustain the latter, and that on the findings the court was bound to render judgment in their favor, it must be taken as conceded by appellants that the testimony warranted the findings.

2. RIGHTS OF TENANT—HAZARDOUS USE OF PREMISES BY LANDLORD.

Plaintiffs rented part of a building from defendant, who, as they knew when making the lease, used the other part as a carriage repair shop, and action was brought to restrain such use as being in violation of a covenant in the lease providing that the part of the building not leased to plaintiffs should not be used for any hazardous business. *Held,* that the lease was executed with the implied understanding that the part of the building not leased to plaintiffs would continue to be used as before, and that this imported a license to keep the articles and employ the agencies incident to such use.

3. SAME—RELIEF BY INJUNCTION.

Even if there is a technical violation of a covenant of this character, an injunction will not issue if plaintiffs have suffered no injury, and the grant of the relief prayed for would do wrong rather than prevent it.

Appeal from equity term.

Action by Morris Neiman and others against James H. Butler to enjoin the use of a building in alleged violation of a covenant in a lease. From a judgment for defendant, plaintiffs appeal. Affirmed.

Argued before BOOKSTAVER and PRYOR, JJ.

*Kantrowitz & Esberg, (Moses Esberg,* of counsel,) for appellants. *A. G. Vanderpoel,* for respondent.

BOOKSTAVER, J. Plaintiffs brought this action to procure a judgment enjoining and restraining the defendant from using a portion of the buildings known as Nos. 242, 244, and 246 East 122d street for a purpose offensive and obnoxious to plaintiffs, and to restrain a violation of a covenant in the lease. The action was tried at an equity term of this court, and a judgment rendered for the defendant. Plaintiffs appeal from the findings and conclusions of law alone, without printing any testimony; hence the only question that can arise on this appeal is whether the findings of fact sustain the conclusions of law. It may be conceded, as appellants contend, that it is well settled that, where the appeal is from a judgment rendered on the report of a referee or the findings of a judge, the exceptions appearing in the proposed case serve as a notice to the respondent of an intention to raise the question of legal error, and puts on him (the respondent) the responsibility of adding by amendment any omitted evidence on the question to be raised. *Halpin* v. *Insurance Co.,* 118 N. Y. 171, 23 N. E. Rep. 482; *Brayton* v. *Sherman,* 119 N. Y. 623, 23 N. E. Rep. 471; *Healy* v. *Clark,* 120 N. Y. 642, 24 N. E. Rep. 316. But this rule cannot apply where no case is made, and none of the evidence is printed, and where the appellant in his brief expressly states that the appeal is taken from the findings and conclusions of law alone, on the theory that the findings of fact do not sustain the conclusions of law, and that on these findings the court was bound as a matter of law to find a judgment in favor of appellants; in such a case it must be taken as conceded by the appellant that the testimony warranted the findings. The learned judge who tried this case found that on the 24th July, 1890, at the city of New York, the defendant, as owner of the real estate known as Nos. 242, 244, and 246 East 122d street, executed and delivered the indenture of lease or agreement under seal mentioned in the complaint to the plaintiff Morris Neiman; that the lease in question was signed and executed by the plaintiff Neiman with full knowledge on his part that the defendant had built and was then using a blacksmith's forge, and had

paint and varnish in the cellar of the premises; that he knew at the time he executed this lease that the defendant occupied the first story of the buildings in question as a carriage depository, and that painting and varnishing were being done there in the prosecution of defendant's business; that the defendant signed and executed the lease understanding that he was to continue the business as then carried on by him, but in case of his leasing it to other persons or corporations the condition should apply to them only; that the plaintiff Morris Neiman entered upon the occupancy of the demised premises on or about the 1st November, 1890, and continued to occupy the same until the formation of the copartnership between him and his coplaintiffs on or about the 1st day of January, 1891, and that he then transferred to such firm his interest in the lease, and that the plaintiffs had continued to occupy the premises under the lease, and pay the rent therefor to the defendant, since the formation of the copartnership, carrying on the business of manufacturing knitted worsted goods made of woolen yarn; that such lease contained the following covenant: "It is further agreed between the parties hereto, as a part and parcel of the consideration hereof, that the party of the first part (landlord) will not let or rent that portion of the premises Nos. 242, 244, and 246 East 122d street, New York city, not let to the party of the second part as aforesaid, to any person, persons, or corporation for any business of a noxious or offensive character, or deemed extrahazardous, or for any business that may be extrahazardous to the party of the second part, (tenant,) and that the party of the first part (landlord) will not permit the same to be used for any business that is hazardous, during the term hereby demised." That the plaintiffs in their business used worsted goods of delicate tint and texture, and employed a considerable number of workmen and girls; that, before such lease was executed, the defendant was occupying certain premises on Second avenue near 122d street for the repair and manufacture of carriages, and since the execution of the lease the defendant had used and continued to use the portion of the premises not demised to Morris Neiman for the repair of carriages, in which business he occasionally used a blacksmith's forge placed in the basement of the premises, also hammers and a sledge, and a swage, and paints and varnish, in the repair of carriages, and that the hammers were about one pound in weight. The court also found that with the knowledge and consent of the defendant, and for the purpose of his business of repairing carriages, hammering was done in the basement; that the maintenance and use of the blacksmith's forge, and the repair of carriages on the premises occupied by the defendants, and the use of varnish and paint therein, were hazardous in the sense only that the presence of fire, paint, and varnish, whether on the premises described in the complaint or elsewhere, may be so considered; and that the use of paint and varnish in the premises in which the blacksmith's forge was operated was hazardous on account of fire, in the sense above stated only; and that the use of paint and varnish in the premises in which the blacksmith's forge was operated was offensive and obnoxious to plaintiffs and their servants, but not more so than the use of paint and varnish in the same premises may be offensive and obnoxious to persons other than plaintiffs or their servants. He also found that neither Morris Neiman nor the plaintiffs ever entered into any express agreement with the defendant to allow him to use any portion of the realty for the repair of carriages, or to operate or maintain a blacksmith's forge therein. But he found that no smoke, with noxious and offensive odors, and no other material dangerous to the health or comfort of plaintiffs or their servants, came from defendant's blacksmith's forge to the plaintiffs' premises, and that it did not cause smoke or dust to arise therefrom so as to cause any injury to plaintiffs' stock of worsted goods, and that such smoke and dust had not spoiled or damaged any of their goods, and that the plaintiffs had not suffered any damage by the use of the blacksmith's forge in question by the defendant as he used it.

These findings, all of which must be taken as having been substantiated by evidence, make it clear that the defendant did not violate the first part of the covenant above recited, by letting the premises to any person, persons, or corporation for any business of any character, as he has continued in the occupation of the same just as he had been doing at the time the lease was made and the covenant entered into; so that the only question arising is whether the latter part of the covenant, in which the defendant undertook not to permit the premises to be used for any business which was hazardous during the term, has been violated in such a way as to authorize the granting of an injunction to prevent its further violation. The only possible ground on which the affirmative of such a contention can rest is that when the plaintiffs requested the court to find the maintenance and use of a blacksmith's forge and the repair of carriages on the premises occupied by defendant, and the use of varnish and paints therein, are hazardous, the learned judge who tried the case stated, "I find this, in the sense that fire, and the use and storage of paints and varnish where there is fire, may be deemed hazardous;" and that, when asked to find the same thing in respect to health, he made the same qualification, which was, in substance, repeated as often as such or similar requests were made. What the judge who tried the case meant by these qualifications is apparent from the twenty-ninth finding of fact, in which he says that "the maintenance and use of such blacksmith's forge, and the use of varnish and paint in defendant's business as repairer and manufacturer of carriages, are hazardous to plaintiff's business, in the sense only that the maintenance and use of a blacksmith's forge, and the use of varnish and paint in premises other than those mentioned in the complaint, and in proximity thereto, may be considered hazardous to the same or other business." But this was no more than saying, what every one will concede, that, whenever and however fire may be brought in close proximity to paint, oil, varnish, or any other inflammable substance, there will be hazard or danger. It is just as true of a gas flame as of a blacksmith's forge, and of a lighted candle as of either. Yet no one would think of obtaining an injunction against carrying around a lighted candle in such a place. The danger is not in the forge, but in the fire; and this is all the judge meant when he found as he did. Besides, he has found that the lease was executed by the plaintiff Morris Neiman with full knowledge that the defendant had built and was then using the blacksmith's forge, and had paint and varnish in the cellar of the premises, and that these were used on the first floor in the prosecution of his business. There is nothing in the findings which intimates that the defendant intended or was expected to give up his business, or was in any manner to change his mode of carrying it on when the plaintiffs took possession of the portion of the premises leased to them. Had this been expected of him, the plaintiffs should have had it expressed in terms clearer than in the covenant above referred to. And the judge very properly found that the defendant executed the lease understanding that he was to continue his business as then carried on by him. We think the same rule should be applied to the construction of this covenant which has often been done in insurance cases, which is that the insurance of property, in contemplation of its use for a known and specified purpose, imports, *ex vi termini*, a license to keep the articles and employ the agencies incidental and essential to the beneficial enjoyment for the use proposed. So far has this rule been applied in such cases that it has been held it will prevail over a prohibition in the printed part of the policy. *Harper* v. *Insurance Co.*, 17 N. Y. 194; *Mayor, etc.*, v. *Hamilton Fire Ins. Co.*, 10 Bosw. 537. We have said nothing as to defendant's business being hazardous to the health of plaintiffs or of their employes, for the reason that we think the covenant was intended to apply only to a business hazard; but, if it applies to health as well, then the same reasoning is applicable, especially in view of the fact that the judge has found no smoke or noxious or offensive odors came from the forge

in question, and that no other material, dangerous to the health and comfort of plaintiffs, came from it, and that it was only offensive or obnoxious where there was fire. It cannot be successfully argued that the defendant's business, as carried on by him, was unreasonable or a nuisance, as the judge was specifically requested to find both of these facts, and he refused. Nothing has been presented to us from which we can draw any such inference, much less find that it was either. Besides all this, the judge expressly found, on what we must assume was sufficient evidence, that the plaintiffs suffered neither damage nor inconvenience from the use of the blacksmith's forge, or the odors or gases arising therefrom; consequently, even if there were a technical violation of the covenant, the plaintiffs have suffered no injury therefrom, and no injunction should issue. In this case there is no irreparable injury, no clear and certain right to the relief asked for, no interruption of any right which on just ground ought to be prevented. A court of equity will not grant an injunction nor compel the performance of a covenant where there is no substantial wrong to be righted. *Purdy* v. *Railroad Co.*, (Com. Pl. N. Y.) 13 N. Y. Supp. 295; *Brush* v. *Railroad Co.*, (Com. Pl. N. Y.) 17 N. Y. Supp. 540; *Bank* v. *Lynn*, 1 Pet. 376; *King* v. *Hamilton*, 4 Pet. 311; *Taylor* v. *Longworth*, 14 Pet. 172; *Peters* v. *Delaplaine*, 49 N. Y. 367, 373; *Sherman* v. *Wright*, Id. 227; *Iglehart* v. *Vail*, 73 Ill. 63; *Fish* v. *Leser*, 69 Ill. 394; *Thurston* v. *Arnold*, 43 Iowa, 43; *Sweeney* v. *O'Hora*, Id. 34; *Quinn* v. *Roath*, 37 Conn. 16; *McComas* v. *Easley*, 21 Grat. 23; *Hale* v. *Wilkinson*, Id. 75; *Plummer* v. *Keppler*, 26 N. J. Eq. 481. It will not in all cases interfere even to compel the performance of a statutory provision; it must first be satisfied that the thing asked for will be useful to the plaintiff. *Clarke* v. *Railroad Co.*, 18 Barb. 350. And, although it will grant an injunction against a tenant for an infraction of a negative covenant on slight grounds, yet it will not enforce the observance of mutual covenants in regard to the use of land, where, in its discretion, it would not be for the advantage of the parties. *Trustees* v. *Thacher*, 87 N. Y. 311; Story, Eq. Jur. 713, 742, 750, 769; Willard, Eq. pp. 263, 264. So, too, it will not interfere by injunction to prevent an injury merely nominal or theoretical in its nature, although an action at law might be maintained for the same injury, (*Bassett* v. *Salisbury, etc., Co.*, 47 N. H. 426;) nor where the case presents a probability that more wrong will be done than prevented by the injunction asked for, (*North* v. *Kershaw*, 4 Blatchf. 70,) as is apparent would happen in this case. The judgment appealed from should be affirmed, with costs.