KEISSEL-
BRACK
v.
LIVINGSTON.

* *Ante,* p. 65.

<hr/>

## KEISSELBRACK *against* LIVINGSTON.

Parol.proof is admissible to correct a *mistake* in a written contract, in favour of the plaintiff, seeking a specific performance of that contract; especially, where the contract, in the first instance, is imperfect without referring to facts *aliunde*.

As, where there was an agreement to execute a lease for lives, "containing the usual clauses, restrictions, and reservations, contained in leases given by the defendant," it being necessary to resort to proof, *dehors* the agreement, to ascertain what were the usual clauses, &c. in such a lease; it was held to be open to the plaintiff, also, to show by *parol*, that it was agreed and understood, at the time, that a particular reservation was not to be inserted in the lease, which the defendant was to execute.

The statute of frauds does not apply to such a case.

*Sept.* 18th.

THE bill, which was filed *December* 15, 1814, stated, that on the 15th of *February*, 1803, the defendant (proprietor of the manor of *L.*) entered into an agreement, in writing, with *William Fritz*, to execute a lease to him of the farm on which he then lived, in great lot No. 3., in *L.*, for the

lives of *W. F.* and his wife, and his son *A.  W. F.* was to pay to the defendant 480 dollars and 37 cents, with interest, from the 1st of *May,* 1800, on the 1st of *May,* 1805, and the annual rent of twenty-two bushels of wheat; the lease to contain the usual clauses, restrictions, and reservations, in leases given by the defendant.  *W. F.* covenanted to commit no waste, and not to assign before the agreement was fulfilled, without leave of the defendant in writing.  *W. F* remained in possession of the farm until the 28th of *April,* 1806, when he assigned the agreement, and all his interest therein, to the plaintiff, for 1,300 dollars.  The plaintiff took possession under the agreement and assignment, and has ever since continued in possession of the farm.  The plaintiff took the assignment in the presence, and with the approbation of the defendant, and has paid the rents reserved. The bill alleged that the defendant refused to execute a lease to the plaintiff, unless he would pay to him *one-fifth* of the purchase money, and agree to receive a lease containing a reservation of the same proportion of the purchase money on all future sales; whereas, it was agreed and understood by the parties, when the agreement was made between *W. F.* and the defendant, that the farm should not be subject to a fifth of the purchase money, or *quarter sales;* and that the plaintiff paid the whole consideration to *W. F.*  That the defendant had brought an action of ejectment against the plaintiff.  The bill prayed for an injunction, and for general relief, &c.

The material allegations in the bill were either admitted, or proved by the witnesses examined in the cause.  The defendant, in his answer, referred to a printed form of leases given by him, annexed, (and which was tendered to the plaintiff, who refused to execute it,) containing a reservation of one fifth of the money arising on sales, &c., and denied any such parol agreement as stated in the bill; and insisted that, by the statute of frauds, he was not bound by any parol

agreement contrary to the written contract, and claimed the benefit of the statute.

*Van Buren,* for the plaintiff.

*E. Williams,* contra.

The Chancellor. This a bill for the specific performance of an agreement in writing, to execute a lease for lives, " containing the usual clauses, restrictions and reservations contained in the leases given by the defendant." The agreement was made and executed in 1803, with *William Fritz,* who was in possession of the land, and continued thereon, until he assigned his right and interest, under that agreement, to the present plaintiff, in 1805, who took possession, with the knowledge and consent of the defendant, and has remained in possession ever since, and paid the rent down to 1813. The defendant, in *August,* 1814, offered to the plaintiff a lease with a provision in it, that upon every sale of the demised premises, one fifth of the purchase or consideration money, should be taken by the defendant to his own use. The bill states that such a lease was offered and refused, and charges that the parties agreed and declared, at the time of the execution of the agreement in writing, in 1803, that no such quarter or fifth sales should be demanded or paid.

The defendant does not, in direct and clear terms, deny any such agreement, that the farm should be exempt from quarter or other sales, but denies " any other or different contract than the one set forth." By *contract,* here he evidently means the agreement in writing; and he says, further, that the parol agreement is falsely charged, but it is not stated wherein, or to what extent; and as to the validity of any such agreement, he pleads the statute of frauds.

The only material point in this case is, whether the lease to be given, should or should not contain a reservation of

one fifth of the money on every sale, to the defendant, and his heirs and assigns.

The testimony taken in the cause establishes, beyond all doubt, the parol agreement as charged, and that the writing, if it requires a different construction and operation, has been so far drawn and executed in mistake. The three witnesses (*George Amaigh*, *William Fritz*, *and John Loomis*,) establish the fact most clearly, and I am not at liberty to discredit witnesses who are unimpeached. The only question is as to the competency of the proof.

The statute of frauds does not appear to me to have any bearing upon this case. The agreement for the three life lease, is in writing, and it has been partly performed by possession taken and transferred, and rent paid. The right of the plaintiff rests upon the contract in writing, and the only inquiry is, whether there is not a mistake in the generality of the expression, that the lease was to contain the "usual clauses," &c., and whether the parties did not intend an exception in respect to the quarter sales. There is no doubt of their declared intention to make such an exception, at the time the agreement was drawn ; and I am induced to think that the writing is, and ought to be, susceptible of amendment and correction, in that particular. This is not an undertaking to supply a defective agreement by parol proof, or to construe it, by resorting to previous negociations and conversations between the parties. It is making the writing speak what the parties intended it should speak, when they executed it ; and I see no objection to the admission of parol proof in this case, that would not equally apply to every case of an attempt to correct, by parol proof, a mistake in a deed.

This is a peculiar case, in which parol proof is necessary, at all events, to give meaning and effect to that part of the writing which refers to the usage of the defendant, in drawing his leases. The reference is to a matter of fact, since what are *usual clauses* in his leases, must be shown by proof.

1819.

KEISSEL-
BRACK
v.
LIVINGSTON.

Parol proof to
correct a mis-
take in a con-
tract, is admis-
sible, as well
in favour of the
plaintiff, as the
defendant.

*dehors* the instrument. The agreement was not, in the first instance, perfect, without reference to matters of fact, *aliunde*. Parol proof is let in by the agreement itself, in order to settle the terms of the lease; and that being the case, there is less objection, in principle or policy, to carry the parol proof so far as to show what was the actual understanding of the parties, at the time, as to those terms. The Master of the Rolls stopped short of relief, in the case of *Woollam* v. *Hearn*, (7 *Ves.* 211.) where a mistake was alleged, because he said there was no precedent for allowing parol proof to correct a mistake, *in favour of a plaintiff*, seeking specific performance of an agreement. He admitted, however, that the proof before him made out the plaintiff's case, and that it would have been received as sufficient to refuse relief, if *the defendant* had sought a specific performance. I am not sufficiently instructed, at present, to admit the soundness of this distinction, which holds parol evidence admissible to correct a writing as *against*, but not *in favour* of a plaintiff, seeking specific performance of a contract. Lord *Hardwicke* does not appear to have been aware of any such distinction, in the two cases to which Sir *Wm. Grant* refers. Lord *Thurlow* rejected parol proof in the case of *Irnham* v. *Child*, (1 *Bro.* 92.) when offered by a plaintiff seeking performance of an agreement, and at the same time seeking to vary it by parol proof, but he went upon general grounds, applicable to such proof as coming from either party. And why should not the party aggrieved by a mistake in the agreement, have relief as well where he is plaintiff, as where he is defendant? It cannot make any difference in the reasonableness and justice of the remedy, whether the mistake was to the prejudice of one party or the other. If the Court has a competent jurisdiction to correct such mistakes, (and that is a point understood and settled,) the agreement when corrected, and made to speak the real sense of the parties, ought to be enforced, as well as any other agreement perfect in the first instance. It ought to

have the same efficacy, and be entitled to the same protection, when made accurate under the decree of the court, as when made accurate by the act of the parties. The one case illustrates the other—*res accendent lumina rebus.*

But without pursuing this point further, at present, it is sufficient to observe, that we are obliged, by the particular terms of this agreement, to deal with written and parol proof, to ascertain the clauses, and restrictions, and reservations that were intended. The written agreement rests for its consideration and performance, partly upon the aid of parol proof. And such proof being let in, by the contract itself, it may, upon the very principle admitted by the agreement, be applied to correct any mistake manifestly shown to exist in the general and unqualified terms of that part of the written agreement which depends for its explanation upon external proof.

I shall, accordingly, direct a specific performance of the agreement as corrected by the proof, and shall award costs, as was done by Lord *Hardwicke*, in *Bingham* v. *Bingham*, (1 *Ves.* 126.) in a decree correcting a mistake.

*Costs* awarded on a decree *correcting* a mistake in a contract, on a bill for that purpose, and for a specific performance.

Decree accordingly.