JAMES PURCELL *vs.* PATRICK BURNS.

*P* held a contract for a conveyance by *B* of certain premises on which there was a mortgage which *P* was to assume, the mortgage resting also on other land of *B*; the conveyance to be made on *P's* making certain payments. After making the payments *P* gave *B* a quit claim of the premises, releasing in terms all his interest under the contract. Held, upon a bill brought by *P* to compel *B* to convey in accordance with the contract, that parol evidence was admissible to show that the quit-claim deed was given for the purpose of enabling *B* to make a new arrangement of the mortgage, and was not intended as an absolute release of *P's* interest to *B*.

Under the new arrangement a larger mortgage was made by *B* covering both pieces of land as before. Form of decree upon the peculiar facts of the case.

BILL IN EQUITY to compel a conveyance of land under a covenant for a deed; brought to the Superior Court in New Haven County.

The respondent filed an answer setting up a release by the petitioner of all interest in the land under the covenant, which release the petitioner in his replication averred to have been given at the respondent's request, without consideration, and as a means, as represented by the respondent, of adjusting and perfecting the title, and with no intention to release his interest in the land to the respondent. The court found the following facts:

On the 1st day of May, 1860, the respondent Burns was the owner in fee of a piece of land, in the city of New Haven, on a portion of which land stood a house and barn. The New Haven Savings Bank held a mortgage of $2,000 on the land. Purcell, the petitioner, was at this time a tenant of Burns, occupying a part of the house at a small rent. Burns was then, and still is, a man of considerable landed estate. Purcell was then, and has ever since been, a poor mechanic, with a large family, and without any resources, after paying the first $200 on the contract below stated, except his daily labor and that of his wife and children.

On the 1st day of May, 1860, Burns and Purcell, entered into an agreement for the sale to Purcell by Burns of the

southern portion of the land, being 35 feet front by 130 deep, including the buildings, immediately upon the execution of which Purcell took possession of the premises, and has ever since continued in possession.

The contract was executed by both parties under seal, the material part of it being as follows:—"That in consideration of one dollar, and the considerations hereinafter named, the said Burns does hereby agree to sell, transfer and convey to said Purcell, by good and valid deed, the following described tract of land, (describing it,) the premises at this date being subject to an incumbrance of $2,000, and the said Purcell does by these presents bind himself to pay said Burns the sum of $1,000 over and above the incumbrance as follows, to wit: on the first day of May, 1860, $200 ; on the first day of January next, $200; on the first day of July, 1861, $200: and so on semi-annually, until the whole sum of $1,000 shall be paid, with interest on each installment; and he, said Purcell, is to assume and pay said incumbrance of $2,000, and is also to pay all taxes on said property and all insurance on the same and all charges for paving and fencing."

Upon the first day of May, 1860, Purcell paid to Burns $200, and $200 on the 1st of January, 1861; and from time to time thereafter as Burns required, paid other sums, until the 14th day of July, 1864, when, upon a final accounting then had between them, Purcell paid to Burns, to his full satisfaction, the entire balance of the $1,000 and interest thereon.

Purcell also paid all the taxes, insurance, assessments and repairs on the premises, and also the interest on the $2,000 note in the bank, up to and including the 15th day of June, 1866, on which day he paid in advance the interest up to the 15th day of December, 1866.

Up to the 15th day of November, 1866, Purcell had performed all his obligations under the agreement, and whatever delays there had been in his payments had been waived by Burns.  At this time the premises had increased in value and were worth in the spring following from $6,000 to $7,000.

On the 15th day of November, 1866, Purcell executed and delivered to Burns a release deed of the land in question, the instrument in terms releasing all interest under the contract with Burns. This instrument, the court found, if parol evidence was admissible to show the same, to have been part of the following arrangement, and to have been executed and delivered under the circumstances and for the purposes following.

During the year 1866, and previously thereto, Burns desired to raise a sum of money to make a payment on an estate purchased by him in Branford, and concluded to raise it by a mortgage to the New Haven Savings Bank, of that portion of the original lot which had not been contracted to Purcell. As the mortgage of $2,000 which had been assumed by Purcell still rested on the whole tract, it became necessary to remove it from Burns's part of the land and place it wholly on Purcell's part, or else for Burns and Purcell to unite in effecting a new loan on the whole property, $2,000 of which new loan should be applied to pay the former mortgage debt, and the balance go to Burns to be used as intended. Purcell was unable to secure the transfer of the $2,000 mortgage to his part of the land, and accordingly expressed his willingness to join with Burns in such action as might effect the object. Burns thereupon applied to the bank for a loan on the whole land of $3,200, and the application was referred to the attorneys of the bank for a search of titles and the making of the necessary deeds. At this time the bank had knowledge of the contract to Purcell, and the attorneys of the bank, after examining the title, required of Burns, before they would give him a certificate, that he should obtain from Purcell a quitclaim of his interest, in order that the title might stand unembarassed in Burns at the date of the new mortgage to the bank. It was thereupon agreed between Burns and Purcell, that Purcell should execute and deliver to Burns such an instrument as the bank might require, and that Burns should thus be enabled to procure the loan, which instrument Purcell did so execute and deliver, and which is the quitclaim deed above referred to. The court found that this deed was given without valuable consideration, and for the sole purpose of enabling Burns to procure the loan, and as a

part of the agreement to assist him in effecting the loan, and that neither Burns nor Purcell, either before the deed was given or at the time it was given, supposed or intended that it should have any other effect than as above, or that it should operate to divest Purcell of any of his rights under the contract as between himself and Burns, but that they agreed and intended that Purcell's interest in the land under the agreement should remain unaltered, except so far as was necessary to secure the bank in the mortgage given to secure the new loan.

On the 16th day of November, 1866, Burns mortgaged the whole lot to the bank, and obtained a loan of $3,200, $2,000 of which was retained by the bank in payment of the former mortgage debt, and the remainder was paid to Burns.

On or about the 1st of January, 1867, Purcell tendered to Burns the semi-annual interest then due, in advance, on the $2,000, which Burns refused to receive. About the same time Purcell heard a rumor that Burns had obtained from him an absolute release of the premises, and that he, Purcell, had no longer any interest therein. He thereupon made immediate inquiry of the attorneys of the bank as to the legal effect of the release signed by him, and was informed by them that its legal effect was to vest in Burns his entire interest. Purcell then procured a deed to be drawn from Burns to himself, and obtained from another savings bank the promise of a loan of $2,000 on his part of the land, and then called on Burns and offered to raise his part of the mortgage of $3,200, and requested Burns to execute the deed. Burns refused to do anything at that time, and promised to come in about April 1st, and arrange matters. After April 1st, as Burns did not appear, Purcell again called upon him and made the same offer and demand, to both of which Burns returned a flat refusal, and from that time forward Burns has denied all right of Purcell to the land. And the court found that the claim of Burns as to his rights under the release and his acts under the claim, were an attempt to compel Purcell to perform an agreement entirely different from the one in fact made, and were an attempt to make an unjust and fraudulent use of the release deed.

Since November 16th, 1866, the interest and taxes on the premises have been paid by Burns, but Purcell is ready and willing to repay the same and to pay his portion of the mortgage debt.

And the court found that, if the above parol testimony was admissible, Purcell was entitled to a decree in his favor.

The questions whether this evidence was admissible, and whether, if so, any decree in favor of the petitioner could be made, and if any, what decree, were reserved, upon the foregoing facts, for the advice of this court.

*Watrous* and *W. C. Robinson*, for the petitioner.

*Baldwin*, for the respondent.

FOSTER, J.  Three questions on this record are reserved by the court below for the advice of this court:

1. Whether the parol evidence, set forth in the finding, was admissible in connection with the release deed given by the plaintiff to the defendant dated Nov. 15, 1866.

2. If such evidence was admissible, can any decree be passed in favor of the plaintiff?

3. And if so, what shall the decree be?

That the parol evidence was admissible for the purposes for which it was offered, we entertain no doubt.  The principles involved in the question have been so often discussed and decided in this court, that further examination seems unnecessary.  *Collins* v. *Tillou*, 26 Conn., 368; *Clark* v. *Tappin*, 32 Conn., 56; *Baldwin* v. *Carter*, 17 Conn., 201; *Quinn* v. *Roath*, 37 Conn., 16; *Reading* v. *Weston*, 8 Conn., 117.

We are also clear that judgment should be rendered for the plaintiff, and a decree passed in his favor.

As to the character of this decree, some embarassment arises from the change which has occurred in the amount of the lien, by mortgage, upon the premises, since the original contract between the parties was made.  The New Haven Savings Bank, which holds this mortgage, is not a party to

this bill, and is not before the court. From the facts found the case of the plaintiff calls too loudly for equitable relief to be resisted on technical grounds, unless they shall be found quite insurmountable. They are not, we think, of that character. A decree can be framed which will do substantial justice to the plaintiff, without impairing the rights of others, and without violating any established rules and principles of equity.

By the original contract the plaintiff was to pay the defendant $1,000 in installments from time to time, the mortgage on the property amounting to $2,000, together with all the taxes and insurance, and all charges for paving and fencing. Equity of course demands a full performance of all these conditions by the plaintiff on his part, before he is entitled to a conveyance of the land.

The $1,000 has been paid by the plaintiff, and the interest on the $2,000 up to the 15th of December, 1866. The next payment of interest, tendered by the plaintiff soon after that date, was refused by the defendant, and has not since been paid by the plaintiff. This interest, together with the taxes and insurance, since paid by the defendant, should be reimbursed to him by the plaintiff, and the defendant should then give him a deed of the premises.

But the mortgage now resting upon the place, which mortgage also includes adjacent land, amounts to $3,200, and the payment of the $2,000, with interest, will not clear off the incumbrance.

Let the plaintiff pay to the defendant such taxes and insurance on the premises, and such interest on the mortgage debt of $2,000, as the defendant may have paid; then let the plaintiff pay to the New Haven Savings Bank, if the bank will receive the same, and will, in consideration thereof, release the land from the incumbrance, the sum of $2,000, (which we are given to understand the bank is willing to do;) then let the defendant give to the plaintiff a deed of the land, with the usual covenants of warranty and against incumbrances. And if the bank will not receive the same, and so release the land, let the plaintiff pay the sum of $2,000 to

the defendant, and let the defendant, within such reasonable time as the court shall limit and appoint, procure the release of the land from the lien of the mortgage, and give to the plaintiff a like warranty deed of the land with the usual covenants.

The Superior Court is advised to pass a decree in accordance with these views.

In this opinion the other judges concurred.