# PROVIDENCE COUNTY.

### WILLIAM F. MACOMBER *vs.* STEPHEN F. PECKHAM.

In the case of an executory contract for the sale of land, oral testimony cannot be received in equity to reform the written contract on account of mutual mistake, and to specifically enforce it as reformed.

In the case at bar, oral testimony was offered to show that the respondent agreed by word of mouth to sell, and the complainant to buy, a certain tract of land, and that by mutual mistake the agreement as put in writing and signed did not include the whole tract. The bill asked for a reformation of the written agreement to make it include the whole tract, and for a specific performance of the reformed agreement.

*Held*, that the oral testimony was inadmissible.

*Held*, further, that the oral testimony was equally inadmissible, whether to expunge words from or to add words to the written contract, if the effect would be to widen the scope of the written contract.

BILL IN EQUITY to reform a written contract for the sale of land, and to enforce it as reformed.

*March* 2, 1889. DURFEE, C. J.   The contract set forth in the bill is a contract in writing signed by the defendant, whereby the defendant agrees to sell to the complainant a tract of land in Coventry and West Greenwich, known as the " estate of the American Cranberry Company, as platted by George W. Lamphear in 1870," and containing about 864 acres of land, for the sum of $12,500, to be paid as stated therein, the agreement to hold good until May 1, 1888, and a quitclaim deed of the premises to be given at any time before that date.   The bill alleges that, by a mutual mistake of the parties in drawing up the contract, a portion of the land agreed to be sold was not included in it.   The prayer is, that the contract may be reformed so as to include the omitted part, and that as reformed it may be specifically enforced. The answer denies that any mistake was committed as alleged. When the case came on for hearing, the complainant offered to prove the mistake by oral testimony for the purposes of relief as aforesaid.   The defendant objected, and the court suspended the hearing to enable counsel to prepare briefs and argue the question before proceeding further, which has been done.

It is well settled that where, by reason of fraud or mistake, a

contract for the sale of land is not, as reduced to writing, the contract which was agreed upon, the fact may be shown by oral testimony in defence to a bill for the specific performance of the contract as written, to defeat the bill. The case at bar is not such a case. Nor is it a case in which it is claimed that the contract is taken out of the operation of the statute of frauds by part performance on the part of the complainant. It presents the naked question, whether oral testimony will be received in equity for the purpose of reforming a written contract for the sale of real estate on the ground of mutual mistake, and of enforcing it specifically when reformed.

There is a conflict of decision on this question. The doctrine of the English chancery courts is, that oral testimony is not admissible for the purpose of reforming an executory contract in writing and then enforcing it, no matter whether the contract be within the statute or not.

In this country a more liberal doctrine prevails, and the cases are numerous which assert the jurisdiction, though the cases are very few in which the jurisdiction has ever been actually extended to executory contracts in writing within the statute of frauds, in the absence of anything, in the way of estoppel or part performance, to raise an equity against the operation of the statute. And in most of the few cases referred to, no consideration was given to the statute as affecting the question of jurisdiction. There are cases, however, both English and American, in which the effect of the statute has been considered.

In *Rich* v. *Jackson*, 6 Ves. Jun. 335 *n.*, decided A. D. 1794, the bill prayed that a written contract for a lease might be reformed by introducing the words " free of all taxes," accidentally omitted, and that as reformed it might be specifically enforced, but Lord Rosslyn refused, being unable to find any precedent for the action. In *Wollam* v. *Hearn*, 1 Ves. Jun. 211; 2 White & Tudor Lead. Cas. Eq. 484, Sir William Grant likewise refused to enforce specifically, but with a parol variation, a written contract for a lease. He said: " Thinking, as I do, that the statute has been already too much broken in upon by supposed equitable exceptions, I shall not go farther in receiving and giving effect to parol evidence than I am forced by precedent. There is no case in which

the court has gone the length now desired." See, also, *Clinan* v. *Cooke*, 1 Sch. & Lef. 22, decided by Lord Redesdale the same year.

In *Davies* v. *Filton*, 2 Dr. & War. 225, Lord St. Leonards refused to reform a lease executed in pursuance of a prior written agreement, saying that the deed could not be reformed by that which would have been inadmissible if the agreement were resting *in fieri* and the bill had sought a specific performance of it. And so in *Attorney General* v. *Sitwell*, 1 You. & Coll. 559, Baron Alderson expressed himself against the power, " because," he said, p. 583, " I cannot help feeling that, in the case of an executory agreement, first to reform and then to decree an execution of it would be virtually to repeal the statute of frauds." The doctrine thus expressed has often been recognized as correct by the English chancery courts, and, though there may be some doubting *dicta*, we are not aware of any English decision to the contrary. *Higginson* v. *Clowes*, 15 Ves. Jun. 516; *Jordan* v. *Sawkins*, 4 Bro. C. C. 477; *Martin* v. *Pycroft*, 2 De G., M. & G. 785; *Manser* v. *Back*, 6 Hare, 443.

It is sometimes urged that, if parol evidence be admissible to defeat specific performance, it ought *pari ratione* to be admissible in support of performance with parol variation. The distinction is admirably explained by Lord Redesdale in *Clinan* v. *Cooke*, *supra*. " It should be recollected," he says, " what are the words of the statute : 'No person shall be charged upon any contract or sale of lands, etc., unless the agreement, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.' No person shall be charged with the execution of an agreement who has not either by himself or his agent signed a written agreement ; but the statute does not say that, if a written agreement is signed, the same exception shall not hold to it that did before the statute. Now, before the statute, if a bill had been brought for specific performance, and it had appeared that the agreement had been prepared contrary to the intent of the defendant, he might have said, ' That is not the agreement meant to have been signed.' Such a case is left as it was by the statute ; it does not say that a written agreement shall bind, but

that an unwritten agreement shall not bind." In *Townshend* v. *Stangroom*, 6 Ves. Jun. 728, the lessor filed a bill for the specific performance of a written agreement for a lease with a parol variation, and the lessee also filed a cross bill for specific performance of the written agreement simply. Lord Eldon dismissed both bills : the first, because the parol evidence was not admissible on behalf of the lessor seeking specific performance ; the second, because it was admissible when adduced by him in defence to show that the agreement as reduced to writing was not what the parties intended.

When the parol variation is set up in defence, it has been held that the court may in its discretion decree performance subject to the variation as set up, if the plaintiff desires, the bill being amended for that purpose. *Lindsay* v. *Lynch*, 2 Sch. & Lef. 19 ; 1 Story Eq. Juris. 770 *a*.

The effect of the statute of frauds is but slightly dwelt upon in the English cases, because the English chancery courts refuse relief whether the written contracts are within the statute or not. In the American cases the bearing of the statute is more explicitly considered. In *Elder* v. *Elder*, 10 Me. 80, the case was precisely like the case at bar, and the court refused relief by first rectifying the contract by oral testimony and then enforcing it, their opinion being that to do so would violate the statute. In *Osborn* v. *Phelps*, 19 Conn. 62, the contract, which was for a sale of land, was written in two parts, one for the vendor and the other for the purchaser, and by mistake they each signed the part intended for the other. On a bill to reform by oral testimony and enforce, the court refused relief. The court was of opinion that under the statute of frauds it was incumbent on the complainant to show both that the contract sought to be enforced had been reduced to writing and had been signed, and that in the absence of such showing the statute was imperative against enforcement, at least without other facts to take the case out of its operation.

In *Climer* v. *Hovey*, 15 Mich. 18, the allegation was, that the parties made a mistake in reducing the contract to writing whereby they described the wrong land. The court refused to correct and enforce. The court say, p. 22 : "When fraud, or part performance, or other recognized equities, create an equitable

estoppel, that may in many cases authorize the correction of instruments upon which parties have acted in good faith.  But the jurisdiction in these cases does not spring from mistake alone, but from a mistake that has been acted on.  And where there are none of these collateral circumstances, it is difficult to perceive wherein correction of a contract by parol evidence differs from the enforcement of an agreement resting entirely in parol.  For where a contract is partly written and partly verbal, it has always been regarded as within the prohibition of the statute."

In *Glass* v. *Hulbert*, 102 Mass. 24, a deed had been given and the purchase money paid.  The complaint was, that a part of the land orally agreed to be conveyed was fraudulently omitted.  The suit was brought to compel the conveyance of the omitted part. The court was of the opinion that the case had not been taken out of the statute by part performance, and held that the defendant could not be compelled to make the conveyance asked for consistently with the statute of frauds.  An elaborate opinion, discussing the matter in all its aspects, was drawn up by Justice Wells. The court held that where " the reformation of an instrument involves the specific enforcement of an oral agreement within the statute of frauds," the statute is a sufficient defence, unless it can be met by some ground of estoppel and declared that this is, in their opinion, founded on an extended examination, the only conclusion which can give consistency to the great mass of authorities on the subject.  The principle, they say, on which written contracts are reformed by oral testimony so as to enlarge their scope, is, that the oral contracts still subsist, notwithstanding the attempt to reduce them to writing, and may therefore be enforced upon satisfactory oral proof, notwithstanding the attempt; but when the defective written contracts are within the statute of frauds, the courts are not authorized to enforce outside of the writing, and in such cases, therefore, enforcement after rectification is as much in conflict with the statute as if there were no writing at all.  The remedy is to have the contract set aside.  1 Story Eq. Juris. § 161.

The complainant has cited cases in which he claims contracts in writing within the statute have been reformed on oral testimony, and then enforced.  *McCurdy* v. *Breathitt*, 5 T. B. Mon.

232 ; *Barlow* v. *Scott*, 24 N. Y. 40 ; *Murphy* v. *Rooney*, 45 Cal. 78 ; *Webster* v. *Harris*, 16 Ohio, 490 ; *Gower* v. *Sterner*, 2 Wharton, Pa. 74; *Bradford* v. *Union Bank*, 13 How. U. S. 57, 66. The only one of these cases which refers to the statute, as affecting the question of jurisdiction, is *McCurdy* v. *Breathitt*, decided on the authority of *Gillespie* v. *Moon*, 2 Johns. Ch. 585, 593. In *Gillespie* v. *Moon* the court was asked to reform, not an executory contract, but a deed which by mutual mistake conveyed fifty acres more than it was intended to convey. The court granted relief by limiting the deed to the two hundred acres intended to be conveyed, *i. e.* by avoiding the deed as to the fifty acres not intended to be conveyed. The case was not within the statute of frauds, and the chancellor, though he asserted the power of the court to reform and then enforce executory contracts in writing, did not in any way discuss the effect of the statute upon the power, nor explain how it could be exercised consistently with the statute.

*Metcalf* v. *Putnam*, 9 Allen, 97 ; *Gates* v. *Green*, 4 Paige, 355 ; *Keisselbrack* v. *Livingston*, 4 Johns. Ch. 144, also cited, were cases, not of executory, but executed contracts. The first was a case of fraud by which the grantee in a deed induced the grantor to sign the deed under the supposition that it contained a covenant which the grantee had secretly erased. The covenant was restored. In the second case a lease was ordered to be surrendered and cancelled, not enforced. In the third case Chancellor Kent said : " The statute of frauds does not appear to me to have any bearing upon this case," and decided without reference to it. The remark is to be borne in mind in considering the language used by him in the opinion.

In *Quinn* v. *Roath*, 37 Conn. 16, the oral testimony was offered by the defendant to defeat the written contract, and the court in receiving it remarked that " a petitioner who brings his bill for a specific performance is not entitled to the same indulgence in the introduction of parol proof." Nor does *Purcell* v. *Burns*, 39 Conn. 429, appear to be in conflict with *Osborn* v. *Phelps*, *supra*.

It must be confessed that the law on this subject is somewhat chaotic and uncertain. We do not wish to express any opinion thereon beyond what is required by the case at bar. In this case the oral testimony is offered to show that the defendant agreed by

word of mouth to sell, and the complainant to purchase, a certain tract of land, and that, in consequence of a mutual mistake, the agreement as reduced to writing and signed did not include the whole of it; and the question is, whether the testimony is admissible to show this, in order that the contract may be reformed so as to include the land omitted, and be specifically enforced as reformed. We think it is not admissible for these purposes both on reason and the greater weight of authority. The court, if it were to receive the testimony and use it as proposed, would virtually substitute the original oral agreement for the written contract, and enforce it in spite of the statute, which declares that no action shall be brought to charge any person on any such agreement. What right has the court to do this? It is argued that the statute was not intended to abridge the ordinary chancery jurisdiction in matters of mistake. But why not, if the language imports that it was? We have not found this question answered in any of the cases. The great names of Kent and Story are invoked in support of the jurisdiction. Kent and Story say there is no reason why oral testimony should not be received as readily when offered by the complainant to reform the written contract, and enforce it when reformed, as when offered by the defendant to defeat its enforcement. This may be so when the written contract is not within the statute of frauds; but when the contract is within the statute the difference between receiving oral testimony, when offered for the purpose of varying the contract and enforcing it as varied, and receiving it when offered for the purpose of showing that the contract as written is not what was agreed to, and of defeating the enforcement, is the difference between doing what is forbidden by the statute and doing what is not forbidden, as was clearly explained in *Clinan* v. *Cooke, supra,* and as has been recognized by Story himself. 2 Story Eq. Juris. § 770. The remarks of Kent and Story seem to have been directed against the doctrine of the English chancery courts, which, as we have seen, is applied to all written contracts, whether within the statute or not, and it does not appear that, in making them, they gave thought to the distinction created by the statute.

It is said that it is hard for the complaining party not to have, on proof of the mistake, the same relief which he could have had

if no mistake had occurred. Doubtless this is true, but it would also have been hard for him not to have had the original oral agreement specifically enforced, without any attempt to put it in writing, if, relying on the honor of the person with whom he agreed, he had implicitly trusted that it would be carried out and had been deceived. There would have been disappointment in both cases, but nothing more than disappointment in either, unless, in consequence of his trust, he had changed his situation for the worse, and this he might have done in either case. Such disappointments are the natural effect of the statute. The purpose of the statute is to avoid the frauds and perjuries, the uncertain and erroneous recollections, and the misunderstandings which are incident to unwritten contracts, by making them incapable of enforcement ; and therefore, when a court receives oral testimony for the purpose of showing that by reason of mutual mistake the contract as reduced to writing is not the contract agreed upon by word of mouth, and of having the latter enforced upon proof thereof, it to that extent invites the evils which the statute was intended to suppress.

The complainant contends that the testimony should be received, because it will show that the contract can be reformed, as he desires to have it reformed, by striking out certain words in it as well as by adding others to it. We think, however, that, if the effect of the change is to enlarge the scope or operation of the contract, it does not matter whether the change is made by striking out words or adding them ; for, in either case, the contract will not be the contract which the defendant signed, and will be more burdensome to him.

Our conclusion is, that the oral testimony is not admissible for the purposes for which it was offered.

*Edward D. Bassett*, for complainant.

*James Tillinghast*, for respondent.