## LISETTE WIRTZ

### *v.*

## THOMAS H. GUTHRIE et al.

[Decided May 17th, 1913.]

1. The amended bill having set up new facts and prayed a relief not within the scope of the original bill, a demurrer may be filed thereto, notwithstanding defendant's answer to the original bill.

2. The statute of frauds (*Gen. Stat. p. 1603 ¶ 5; Comp. Stat. p. 2612*) provides that "no action shall be brought upon any contract or sale of lands unless the agreement upon which the action is brought or some memorandum or note thereof shall be in writing," and inasmuch as the

lack of such writing appears on the face of the bill, the defence of the statute may be made by demurrer.

3. This provision of the statute covers actions in equity as well as at law, but while the decisions of courts of law upon matters of legal title and right are absolutely controlled by the terms of the statute, courts of equity, acting by personal decrees based on obligations equitably arising on the circumstances of the case, have deprived the defendants of the protection of the statute in cases where the effect of giving such protection would be to allow the defendant to perpetrate a fraud, the principle acted on by the courts of equity in these cases being that a fraudulent use shall not be made of the statute.

4. Whether mistake alone, distinct from fraud, is also a ground in equity for depriving a defendant of the protection of the statute, is a vexed question.

5. The question whether the agreement of which reformation is sought is executory or has been executed, is a vital matter as to denying the protection of the statute. If by mutual mistake the executed agreement is contrary to the previous parol agreement of the parties, the party who had received the benefit of the mistake and insists upon holding this benefit under the executed contract, commits a fraud by so insisting, and relief against mistakes thus resulting in fraud are not within the protection of the statute of frauds any more than frauds against the statute of other kinds. Relief against the statute in the whole class of cases involving part performance of parol contracts, or of parol variation of written contracts, is expressly based on this ground of preventing the accomplishment of fraud and this is one of the requirements for relief.

6. On this bill the complainant shows a case where, if the statute prevails, she may possibly be deprived of the benefit of a bargain, but where any bargain relating to lands is oral the statute by its terms gives such protection if invoked, and its enforcement in this case accomplishes no fraud, for defendants have not received and do not retain any benefit derived from the mistake.

7. Where land is the subject of the erroneous instrument, the reformation of an executed conveyance on parol evidence is not precluded by the statute of frauds, for otherwise it would be impossible to give relief. And where a mistake in an executory agreement relating to land is alleged, parol evidence may be admitted in opposition to the equity for specific performance. But it does not appear that where the defendant has insisted on the benefit of the statute, the court has ever reformed such an executory agreement on parol evidence and specifically enforced it with the variation.

On demurrer to amended bill.

The question now to be decided is the validity of the demurrer to an amended bill, but by reason of the possible relevancy of the proceedings on the original bill, the whole case will be stated.

The original bill was filed by the vendor against the purchasers for the specific performance of a written agreement dated May 15th, 1911, for the purchase and sale of lands on Halsey street in the city of Newark. The lands mentioned in the agreement consist of two lots, the description of which by metes and bounds was given in the agreement, a copy of which was set out in the bill. The purchase price was to be $72,000, $1,000 to be paid upon the signing of the agreement and the balance to be paid or secured on the delivery of the deed. The conveyance, which was to be made on November 15th, 1911, was to be subject to the rights of five specified tenants, their leases expiring May 1st, 1912, and the agreement stated that these leases call for the payment of a gross rent of $5,640 per annum. Tender of performance on complainant's part and refusal of defendants to carry out the agreement was alleged, and offering to perform the agreement on her part, complainant prayed specific performance of the written agreement by the defendants, with the usual prayer for general relief. Defendants answered this bill admitting entering into the agreement in writing set out in the bill, and as a defence to its specific enforcement set up false representations made by complainant in the agreement as to the gross rent which "said premises" yielded, which representations induced defendants to execute the agreement. By cross bill with their answer, the defendants set up their entering into the written agreement set up in the bill, allege that previous to and at the time of the execution of the agreement and in the agreement the complainant represented to defendants that the premises described therein were occupied by five named tenants, all under leases expiring May 1st, 1912, and that said leases called for the payment of a gross rent of $5,640 per year, which representations "made as aforesaid" by complainant, induced defendants to execute the agreement, and were relied on and material to the contract. The defendants charge that the gross rent for said premises is considerably less than $5,640, and therefore said representations were false and made for the purpose of inducing defendants to enter into an agreement which they otherwise would not have done. The cross bill prays that the agree-

ment may be decreed to have been fraudulently and unduly obtained and be set aside as void and may be canceled, and that the vendor may be directed to repay the money paid on the execution of the agreement with interest. A prayer for general relief is added. Complainant filed replication to the answer, and answering the cross bill, says that previous to the execution of the agreement and in the agreement the complainant did represent to the defendants that the premises therein described were occupied by the persons named in the agreement, and that the representations in the agreement as to the gross rents called for by the leases of these tenants are true, and denies that the gross rent for said premises is considerably less than $5,640. Issue on this answer was joined by defendants.

. At the hearing on the bill and cross bill it appeared by oral evidence that, by a mistake in drafting the agreement, a lot located between the two lots described in the agreement, also belonging to complainant, and which was part of the premises intended to be sold and purchased, was not included in the description of the premises to be sold. Complainant thereupon applied to amend her bill, and has now filed an amended bill, repeating substantially, or in *haec verba,* the allegations of the original bill, and adding allegations to paragraph 3, that the premises intended to be sold consisted of a plot on Halsey street, with a certain right of way over an alley from the rear thereof to William street; that the premises were conveyed to complainant in three distinct parcels, and that the descriptions contained in the agreement included but two of the three parcels, and that through inadvertence and mistake the tract known as the middle tract was omitted; that the premises so intended to be sold and conveyed by complainant were well known to the defendants, and that they well knew that it was complainant's intention to convey the whole of the said curtilage with right of way, and it was their intention to purchase the same. It is further alleged (paragraph 4) that certain of the tenants mentioned in the said agreement were in possession of that portion of the whole curtilage, the description of which was accidentally omitted, and that the defendants before and

since the agreement well knew that the tenants named in the agreement were together in possession of the whole of the premises intended to be sold and conveyed by complainant, including the portion accidentally omitted from the description of the agreement. It is also alleged that at the time fixed for closing the title neither defendants nor their counsel informed complainant of this omission, and that complainant did not discover the omission until after the time fixed for closing title; that she supposed this tract was included when she executed the agreement, and that the defendants have admitted that it was the intention of complainant to convey and their intention to purchase for the consideration mentioned in the agreement, as well the tract omitted as the tracts described.

By a further amendment to the amended bill and added to paragraph 3, it is expressly alleged that

"the only contract in writing between complainant and defendants is the contract particularly set forth, and that the intention of complainant to convey and the defendants to purchase the tract inadvertently omitted, is not manifested by any instrument in writing."

Complainant in the amended bill offers to convey the omitted as well as the described tract on the terms for payment of the written agreement, which offer defendants refuse to accept and complainant tenders such conveyance.

Complainant therefore prays a reformation of the contract so as to include the omitted tract in the description of premises to be conveyed, and a specific performance of the agreement as reformed, with a prayer for general relief.

To this amended bill, the defendants have demurred, assigning three causes of demurrer, only one of which, the second, is relied on, the others having been abandoned at the hearing and on the brief.

This second ground is, "that neither the promise or contract, alleged by the bill, as to the third tract (the omitted tract), and of which complainant by the amended bill seeks to have the benefit, nor any memorandum or note thereof was ever reduced to writing or signed by the defendants or either of them, or any

person authorized thereunto within the meaning of the statute for the prevention of frauds and perjuries.

Dismissal of the amended bill is prayed by the demurrer.

*Messrs. Lintott, Kahrs & Young,* for the demurrants.

*Messrs. Lum, Tamblyn & Colyer,* for the complainant.

EMERY, V. C. (after statement).

The amended bill having set up new facts and prayed a relief not within the scope of the original bill, a demurrer may be filed thereto, notwithstanding defendant's answer to the original bill. *1 Dan. Ch. Pr.* (*6th ed.*) *409. The statute of frauds (Gen. Stat. p. 1603 ¶ 5; Comp. Stat. p. 2612)* provides that

"no action shall be brought upon any contract or sale of lands unless the agreement upon which the action is brought or some memorandum or note thereof shall be in writing,"

and inasmuch as the lack of such writing appears on the face of the bill, the defence of the statute may be made by demurrer. *Van Duyne* v. *Vreeland (Chancellor Williamson, 1857), 11 N. J. Eq. (3 Stock.) 370, 378; 1 Dan. Ch. Pr. (6th ed.)* *365, *561. This provision of the statute covers actions in equity as well as at law, but while the decisions of courts of law upon matters of legal title and right are absolutely controlled by the terms of the statute, courts of equity, acting by personal decrees based on obligations equitably arising on the circumstances of the case, have deprived the defendants of the protection of the statute in cases where the effect of giving such protection would be to allow the defendant to perpetrate a fraud. The principle acted on by the courts of equity in these cases is that a fraudulent use shall not be made of the statute. *Fry Spec. Perf. (4th ed.) § 567.* Upon the same principle the court of equity has, from a very early period, dealt with the statute of wills as well as the statute of frauds, and by its decrees imposed personal obligations on defendants setting up the statute for the purpose of accomplishing a fraud. *1 Pom. Eq. Jur. § 431; McCormick* v. *Grogan, L. R. 4 H. L.*

*82, 97; Williams* v. *Vreeland (Court of Errors and Appeals, 1880), 32 N. J. Eq. (5 Stew.) 784, 787; Yearance* v. *Powell (Court of Errors and Appeals, 1897), 55 N. J. Eq. (10 Dick.) 577, 579.* ⌈Whether mistake alone, distinct from fraud, is also a ground in equity for depriving a defendant of the protection of the statute, is a vexed question.⌋ The status of the controversy is given in the leading text books and in many of the decisions, especially with reference to the precise point now involved, viz., the admissibility of parol evidence of mistake, in suits by a plaintiff for reformation of a written contract by proof of a parol variation and specific performance of the written contract with the variation where there has been no part performance. ⌈The English rule is that such relief cannot be given in a suit by plaintiff for specific performance unless there has been a part performance of the parol variation.⌋ *2 Pom. Eq. Jur. 861.* ⌈It is said by this author (*Ibid.* § *862*) that the American courts have adopted the better and more enlightened rule that the plaintiff in such a suit may allege and by parol evidence prove, the mistake or fraud, and the modification in the written agreement made necessary thereby and obtain decree for the specific performance of the corrected agreement.⌋ A great number of cases are cited as authority for this statement, among others *Keisselback* v. *Livingston, 4 Johns. Ch. 144, 146,* and two cases from our own court. *Smith* v. *Allen, 1 N. J. Eq. (Saxt.) 43,* and *Hendrickson* v. *Ivins, 1 N. J. Eq. (Saxt.) 562.* In *Smith* v. *Allen (Chancellor Vroom, 1830), 1 N. J. Eq. (Saxt.) 43,* which was heard on demurrer, the bill was filed against principal and sureties on a bond for prison limits to correct a mistake made by complainant inadvertently in drawing the recitals of the bond, after the giving of the usual bond in legal form had been agreed on by the parties. The general jurisdiction in equity to correct documents which by mistake were not put into the form agreed on was asserted, and the authority of the leading American case (*Gillespie* v. *Moon, 2 Johns. Ch. 585*), followed in preference to what was claimed to be the English rule. In *Gillespie* v. *Moon* a deed by mistake included in the description of its bounds a tract containing fifty acres which, as Chancellor Kent

found on the parol evidence, was not intended to be included as the property to be purchased, which was a tract of about two hundred acres. Chancellor Kent (at *p. \*595, &c.*) characterizes the conduct of the purchaser in attempting to retain the possession of this fifty acre tract after his discovery of the mistake in the deed, as fraudulent, and says (at *p. 596*): "It would be a great defect in what Lord Eldon terms the moral jurisdiction of the court, if there was no relief in such a case." In *Hendrickson* v. *Ivins (1832), 1 N. J. Eq. (Saxt.) 562,* on a bill by grantor, a deed was corrected upon proof by parol that by mistake or inadvertence a reservation which had been agreed on was not inserted, and an injunction against enforcing the deed in this respect was granted, on the authority of *Smith* v. *Allen.* And it may be said that our equity courts have, since these early decisions always proceeded on the assumption that where there is a mistake in a deed or other written contract delivered as the final execution of the contract or agreement intended to be made between the parties, and where the party setting up the deed or contract will receive a benefit not intended by either party and a fraud will result if the mistake be not corrected; then the correction of the executed contract will be made on the plaintiff's application. Recent cases in which this assumption has been acted on in cases otherwise within the terms of the statute as actions on contracts or sales of land, are *Cummins* v. *Bulgin (Vice-Chancellor Van Fleet, 1883), 37 N. J. Eq. (10 Stew.) 476,* and *Green* v. *Stone (Court of Errors and Appeals, 1896), 54 N. J. Eq. (9 Dick.) 388.* But these were all cases of the reformation of executed contracts, deeds or other contracts, and in such contracts an element of fraud manifestly arises when the party, after knowledge of the mistake, which has given him a benefit, to which he knows he was not entitled, insists upon holding this benefit to the loss of the other party. This fraudulent aspect of the case arising originally from mistake was clearly the real basis, I think, of Chancellor Kent's decision in *Gillespie* v. *Moon,* and the decisions in this class of cases therefore must really be considered as only extending to deny the protection of the statute of frauds in those cases of mistake where a fraud would

be accomplished if the statute were a protection. The general expression in these decisions, that mistake as well as fraud is ground for denying the protection of the statute, must be construed with reference to the circumstances of the case in which the equitable remedy in case of. mistake was given, and in each of the above cases referred to, the mistake relieved against and made the basis for affirmative relief, was a mistake which had been made in the deed or contract which carried into execution the previous agreement, and by reason of execution of the agreements without the variations which were omitted by mistake, a fraud resulted, if the statute were available in defence.

Story's authority, which is also cited as excepting from the statute cases of mistake as well as fraud, appears to. base the right to protection on the intolerable mischief worked contrary to the intention of the parties. "It would be intolerable," he says *(1 Story Eq. Jur.* § *155),* "to allow an act, originating in innocence, to operate ultimately as a fraud, by enabling the party, who receives the benefit of a mistake, to resist the claims of justice, under the shelter of a rule to promote it. It would be a great defect in the moral jurisdiction of the court, if under such circumstances it were incapable of administering relief." This language applies where the party setting up the statute has received the benefit of the mistake (that is, to executed contracts which give him the benefit), and by insisting on its retention because of the statute, works the intolerable mischief of making the statute operate as a fraud. It does not reach, in my judgment, to executory contracts, within the terms of the statute, where there has been no part performance and the party who sets up the statute has not received and does not retain any benefit derived by him from the mistake, but merely denies the right to bring an action on the parol contract because of the statute.

The question whether the agreement, of which reformation is sought is executory or has been executed, is the vital matter as to denying the protection of the statute. If by mutual mistake the executed agreement is contrary to the previous parol agreement of the parties, the party who had received the benefit of the mistake and insists upon holding this benefit under the executed.

contract, commits a fraud by so insisting, and relief against mistakes thus resulting in fraud are not within the protection of the statute of frauds any more than frauds against the statute of other kinds. Relief against the statute in the whole class of cases involving part performance of parol contracts, or of parol variation of written contracts, is expressly based on this ground of preventing the accomplishment of fraud, and this is one of the requirements for relief. *Fry Spec. Perf. (4th ed.) § 580; 3 Pom. Eq. Jur. 1207, note (Vice-Chancellor Pitney, 1905); O'Brien v. Paterson Brewing, &c., Co., 69 N. J. Eq. (3 Robb.) 132*, and cases cited.

On this bill the complainant shows a case where, if the statute prevails, she may possibly be deprived of the benefit of a bargain, but where any bargain relating to lands is oral the statute by its terms gives such protection, if invoked, and its enforcement in this case accomplishes no fraud, for defendants have not received and do not retain any benefit derived from the mistake. This distinction between executory and executed agreements in reference to the enforcement of parol variations on application of the plaintiff, is clearly brought out in several decisions. *Macomber v. Peckham (Rhode Island, 1889), 17 Atl. Rep. 910; Safe Deposit Co. v. Diamond, C. & C. Co. (January, 1912), 83 Atl. Rep. 54, 59.* The rule as stated (*Ad. Eq. (5th Am. ed.) 171*) is approved in the latter case: "Where land is the subject of the erroneous instrument, the reformation of an executed conveyance on parol evidence is not precluded by the statute of frauds, for otherwise it would be impossible to give relief. And where a mistake in an executory agreement relating to land is alleged, parol evidence may be admitted in opposition to the equity for specific performance. But it does not appear that where the defendant has insisted on the benefit of the statute, the court has ever reformed such an executory agreement on parol evidence and specifically enforced it with the variation." Prof. Pomeroy (*2 Eq. Jur. 866*) states that executory as well as executed contracts may be reformed, on the application of the complainant and then specifically enforced where such relief was given, but the cases he refers to are (including *Hendrickson v. Ivins, supra*), so far as I have examined them, all cases of executed contracts. His statement by way of argument (*Ibid.*) is, that

"if the doctrine [of reformation] can be applied to deeds which have actually conveyed the title, then *a fortiori* may it be applied to mere executory contracts which do not disturb the legal title."

The statute in terms applies to all contracts or sales of lands, to equitable as well as legal titles, and the withdrawal of its protection in equity in certain cases involving a title which may be either legal or equitable, is no basis for extending, *a fortiori,* the exception sustained in a case involving legal title; to a class of equitable interests not within the reason of the exception. If I have correctly apprehended the real equitable ground for reforming executed contracts, as being the one stated by Chancellor Kent in the leading case (*Gillespie* v. *Moon*) viz., the prevention of fraud by the setting up of the statute, this argument of the learned writer wholly fails.

Vice-Chancellor Pitney, in *Lindley* v. *Keim, 54 N. J. Eq. (9 Dick.) 418,* on a bill by the purchaser against vendor for specific performance of an executory contract, reviewed to some extent the decisions upon the general question of proof of parol variations and specific performance of the reformed contract on behalf of the complainant, and this opinion is relied on extending relief to executory contracts. But the learned vice-chancellor seems to disclaim, extending his decision to cases like the present, for he says (at *p. 1081*) that in the case before him "the statute of frauds was not infringed; that it was not a case of introducing parol evidence to add to the thing agreed by the written contract to be conveyed and then asking the court to decree performance of it so amended as against a vendor who would be injuriously affected by the addition, but it was the showing by parol that something was included in the written description of the thing to be conveyed which does not properly belong there and asking the court to eliminate it and to perform the contract without the improper addition." The decree was reversed—*54 N. J. Eq. (9 Dick.) 418 (1896)*—upon the ground that the contract in question was made by an agent without authority, and the construction of the statute on the point now involved was not reached. In *Miller* v. *Chetwood (Chancellor Pennington, 1839), 2 N. J. Eq. (1 Gr. Ch.) 199,* where a vendee set up the defence, it was said that parol evidence, although admissible in defence, was not

admissible in behalf of complainant, and in *National Iron Armor Co.* v. *Bruner* (1868), *19 N. J. Eq.* (4 C. E. Gr.) 331, Chancellor Zabriskie denied the right of a purchaser to introduce parol evidence to lay ground for specific performance against the vendor with compensation for deficiency.

In another class of cases, where complainant set up a parol contract, or a parol variation of a written contract in suits for specific performance, and defendant denied the contracts as alleged, but admitted in his answer contracts which he offered to perform, the court has allowed the complainant the option of taking decree for performance on the contract as admitted. *Wallace* v. *Brown* (*Chancellor Williamson, 1855*), *10 N. J. Eq.* (2 Stock.) 308, 312; *Ryno* v. *Darby* (*Chancellor Zabriskie, 1869*), *20 N. J. Eq.* (5 C. E. Gr.) 231. These cases all involve questions arising under the statute different from those arising on this demurrer. There is no decision in our courts which controls the present case or which brings the case presented by the bill within the settled exceptions to the operation of the statute, and on principle I find no reason for so extending the exception. The demurrer to the amended bill will be sustained, and I will hear counsel as to the order or decree to be made on the original bill.